[S.F. No. 23108. In Bank. June 17, 1974.]

COUNTY OF NEVADA et al., Plaintiffs and Respondents, v. RONALD L. MacMILLEN as District Attorney, etc., Defendant and Appellant.

## COUNSEL

Ronald L. MacMillen, District Attorney, and John H. Darlington, Assistant District Attorney, for Defendant and Appellant.

Kenneth J. Guido, Jr., as Amicus Curiae on behalf of Defendant and Appellant.

Leo J. Todd, County Counsel, and Brian A. Bishop, Deputy County Counsel, for Plaintiffs and Respondents.

## OPINION

**BURKE, J.**—In this declaratory relief action, plaintiffs assert that California's new conflict of interest law (Gov. Code, § 3600 et seq.), enacted in 1973, is unconstitutional. In 1970 this court struck down a similar statute in *City of Carmel-By-The-Sea* v. *Young*, 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313], on the ground that it constituted an overbroad instrusion into the private financial affairs of persons seeking to hold, or holding, public office. We stated in *Carmel* (p. 272), however, that "[n]othing we say here should be deemed to preclude the Legislature in a properly drawn statute from providing for a broad disclosure of assets, income or receipts relevant to the duties and functions of a public officer or employee." We have concluded that although the statute now before us contains some imprecise and uncertain language, nevertheless taken as a whole the new act meets the basic and substantial objections raised in our *Carmel* case and, accordingly, that we should uphold the act against plaintiffs' general constitutional attack. Analysis of the problems which may arise respecting the interpretation or application of particular provisions of the act should be deferred for future cases in which those provisions are more directly challenged.

Plaintiffs are the County of Nevada and various of its supervisors, planning commissioners and other public officials. Defendant MacMillen is District Attorney of Nevada County, and is charged with enforcing the statute in question. Plaintiffs' complaint sought a declaratory judgment declaring the act unconstitutional. They alleged that the act is unconstitutionally vague, requiring men "of common intelligence" to guess at its meaning, at the risk of substantial penalties. They further contended that the act is unconstitutionally overbroad, invading "the fundamental right

of privacy" without serving a reasonable legislative purpose. According to plaintiffs, several county officers "will resign rather than file statements of assets disclosing their financial affairs, or to divest themselves of all economic interests."

In December 1973 two trial court judges deemed themselves disqualified from proceeding with this case, apparently on the theory that all superior court judges are so disqualified. On January 18, 1974, this court issued its order stating that superior court judges are not so disqualified and directing the court to proceed to hear and determine the cause. (*County of Nevada* v. *Superior Court*, 10 Cal.3d 663 [111 Cal.Rptr. 568, 517 P.2d 832].)

At trial, no factual evidence was presented, and it was stipulated that the constitutionality of the statute on its face was the sole issue to be decided. The trial court, focussing on several isolated provisions of the act, discussed below, held the act unconstitutional and enjoined defendant from enforcing its provisions. Defendant appeals. We have stayed the operation of the act pending our disposition of the appeal.

### 1. *The 1973 Act*

We first set forth in summary form the basic provisions of the 1973 act, which adds new sections 3600 through 3760 to the Government Code. It was passed, according to the "legislative findings" set forth in section 3601, to promote and accomplish several state policies including (1) assuring the independence, impartiality and honesty of public officials, (2) informing citizens regarding those economic interests of officials which might present a conflict of interest, (3) preventing improper personal gain by persons holding public office, (4) assuring that governmental decisions are properly arrived at, and (5) preventing special interests from unduly influencing governmental decisions. The act further specifies that its provisions "are to be liberally construed, to the end that the public interest be fully protected." (§ 3602.) The act contains *two* severability clauses whereby the invalidity of any of its provisions shall not affect other valid provisions. (§§ 3602, 3760.)

The act's substantive provisions fall generally into two separate categories, "prohibitions" (§§ 3625-3627) and "disclosure" (§§ 3700-3710). The former category is aimed at prohibiting public officials from possessing economic interests which conflict with their public duties. Thus, section 3625, subdivision (a), provides that "No official[1] shall have economic

---

[1] The term "public official" (which presumably would include "official" under § 3625) is defined as "any elective or appointive officer of any public agency."

interests[2] which are in substantial conflict with the proper exercise of his official duties and powers." Subdivision (b) provides that "No public official shall participate in, or in any way attempt to influence, governmental action or decisions relating to any matter within the responsibilities of his agency in which he knows or has reason to believe he has an economic interest."

An exception to the prohibition against participation of subdivision (b) is made for "any constitutional officer"[3] or for "any public official with respect to any matter which could not legally be acted upon or decided by his public agency without his participation," so long as the official publicly discloses and describes any economic interest which might be materially affected by his action before he acts on the matter, and refrains from attempting to influence any other public officers regarding the matter. (§ 3625, subd. (d).) A second exception to subdivision (b) is made if the action or decision affects the official's economic interest "to no greater extent than any other . . . member of the public, segment of the public or an industry, profession or occupation." (*Id.*, subd. (e).)

With respect to the "disclosure" provisions of the act, applicable only to certain designated officials[4] such as constitutional officers, county supervisors, city council members, planning commissioners and other "chief administrative officers," such officials must, during the month of April each year, file a statement containing certain specified information. (§ 3700.) Among other things, the act requires disclosure of information regarding

---

(§ 3610, subd. (h).) Although the "prohibition" sections apply to all officials, the subsequent "disclosure" sections apply, as we indicate below, only to certain designated officers.

[2]Subdivision (c) of sections 3625 provides that an official has an "economic interest" in a matter "if the action or decision will have a material economic effect on: (1) Any business entity in which the public official has a direct or indirect investment worth more than one thousand dollars ($1,000); (2) Any real property in which the public official has a direct or indirect interest worth more than one thousand dollars ($1,000); (3) Any source of income, loans or gifts aggregating two hundred fifty dollars ($250) or more in value received by or promised to the public official within 12 months prior to the time when the action is taken or decision made; (4) Any business entity in which the public official is a director, officer, partner, trustee, employee, or holds any position of management." An "indirect investment or interest" is "any investment or interest owned by the spouse or dependent children of the public official, by an agent on his behalf, by any business entity controlled by the public official or by a trust in which he has a substantial economic interest. . . ."

[3]The term "constitutional officer" means "the Governor, Lieutenant Governor, Secretary of State, Controller, Treasurer, Attorney General, State Superintendent of Public Instruction, Members of the Legislature, and all other elected state officials." (§ 3610, subd. (c).)

[4]Section 3700, subdivision (a), limits the section to "constitutional officers [see § 3610, subd. (c)], county supervisors and chief administrative officers, mayors, city council members, members of planning commissions and planning officers, and managers and chief administrative officers of general law or charter cities."

(1) any "business entity in which he [the official] has, or at any time during the year had, a direct or indirect investment[5] worth more than one thousand dollars ($1,000), and whether the value of such investment exceeds ten thousand dollars ($10,000)"; (2) any real property in which the official had an interest worth more than $1,000, indicating whether that interest is worth more than $10,000, (3) "[e]ach source of income, loans or gifts, aggregating two hundred fifty dollars ($250) or more in value, received in the preceding 12 months, including the name, address, and general description of the business activity of each source, a statement of the consideration, if any, for which the income was received, and whether the aggregate value of the income, loans and gifts received was worth more than one thousand dollars ($1,000)," and (4) any employment, position or office held at the time of filing or during the year by the official. (§ 3700, subd. (b).)

Under subdivision (c) of section 3700, no interest need be disclosed "which could not be affected materially by any action, failure to act or decision taken by the public official acting within the scope of his official duties." However, under subdivision (d), "an interest in real property located within the jurisdiction of the official's agency or an investment in a business entity, a source of income or a position of employment, office or management in any business entity located within the jurisdiction . . . shall be regarded as an interest which could be effected materially by the official in the scope of his official duties."

The disclosure statement required by section 3700 must also be filed by candidates and nominees for the designated offices, before they face election or assume office (§ 3701), and by former officials, who must file within 30 days after ceasing to hold office (§ 3702). Although section 3700 is applicable only to the class of officials designated in the section, similar statements may be required of other public officials, at the option of the agency involved; section 3704 authorizes all public agencies and boards to adopt rules governing financial disclosure. All statements filed under section 3700 become public records available for public inspection. (§ 3710.)

Finally, the act contains extensive "enforcement" provisions (§§ 3750-3760) which set forth the penalties and other consequences of noncompliance with the act's provisions. The act provides that if a public officer has realized an economic benefit in violation of section 3625 (wrongfully

---

[5]Section 3700, subdivision (b), contains a definition of the term "indirect investment" which is identical to the definition of that term contained in section 3625, subdivision (c), set forth in footnote 2, *ante.*

participating in or influencing agency decision) the court may impose a penalty "of up to three times the value of the benefit." (§ 3751, subd. (c).) Moreover, if the official failed to disclose an economic interest in violation of section 3700, the court may impose a penalty "of up to three times the value of the omitted interest." (§ 3751, subd. (d).) Finally, a violation of the act "shall be grounds for forfeiture of office . . . and for disqualification from holding public office . . . ." (§ 3753.)

### 2. *The 1974 Amendments*

On March 4, 1974, the Legislature amended the foregoing provisions in various respects. (See Stats. 1974, ch. 48, pp. 157-161 [S.B. 1340].) These amendments will become effective on January 1, 1975, and, accordingly, do not directly affect the operation of the foregoing provisions during 1974. However, the amendments are pertinent to an interpretation of the 1973 act, for the Legislature has expressly provided that "The Legislature finds and declares that the amendments affected by this [1974] act are declaratory of the legislative intent in enacting Chapter 1166 of the Statutes of 1973 [the 1973 act]." (Stats. 1974, ch. 48, § 6, p. 161.)

Two of the amendments are pertinent to this case. First, the language presently contained in section 3625, subdivision (a), prohibiting an official from possessing economic interests in substantial conflict with his official duties has been deleted and similar language added to the list of reasons for enacting the act. (§ 3601.)[6] Second, the term "source of income," as used in section 3700, subdivision (b), regarding financial disclosure, is defined as "the business entity or activity of the official which earned or produced the income." (§ 3610, subd. (e).) The significance of these amendments will become evident when we review plaintiffs' contentions regarding the constitutionality of the 1973 act.

### 3. *Plaintiffs' Contentions*

(a) *The Carmel decision*—Plaintiffs assert that the 1973 act is subject to the same constitutional objections as those successfully asserted with respect to the 1969 act in *City of Carmel-By-The-Sea* v. *Young, supra,* 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]. To the contrary, the 1973 act seems specially tailored to meet and satisfy

---

[6]Thus, as amended, evidently the act would contain no express prohibition against *possessing* a conflicting economic interest; section 3625 would continue to bar a public official from participating in, or attempting to influence, governmental action in a conflict of interest situation.

the primary concerns of our *Carmel* ruling. The 1969 act, by its terms, was applicable to *all* public officials, regardless of the nature and scope of their activities. Every official was required to file a statement disclosing the nature *and extent* of all of his investments in excess of $10,000 in value, "without regard to the nature or locale of the asset or whether it bears the remotest relation to the duties of the public office . . . ." (2 Cal.3d at p. 269.) Our major objection to the 1969 act was that "No effort is made to relate the disclosure to financial dealings or assets which might be expected to give rise to a conflict of interest; that is, to those having some rational connection with or bearing upon, or which might be affected by, the functions or jurisdiction of any particular agency, whether statewide or local, or on the functions or jurisdiction of any particular public officer or employee." (*Id.*)

We stated in *Carmel* (p. 269) that "there must be a balancing of interests between the government's need to expose or minimize possible conflicts of interest on the one hand and the right to maintain privacy in one's personal financial affairs while seeking or holding public office on the other . . . ." We concluded that ". . . no overriding necessity has been established which would justify sustaining a statute having the broad sweep of the one now before us, which, as stated, would intrude alike into the relevant and the irrelevant private financial affairs of the numerous public officials and employees covered by the statute and is not limited to only such holdings as might be affected by the duties or functions of a particular office." (*Id.*, p. 272.)

On the other hand, the 1973 act appears to accomplish its legitimate[7] aims in a less intrusive, and considerably more limited, fashion. As noted above, the act's "prohibition" provisions are keyed at enjoining only "substantial" conflicts of interest (§ 3625, subd. (a)) and relate only to public agency action or decision having a "material economic effect" (*id.*, subd. (c)) upon the official's economic interests. Thus, the act does not forbid an official to participate in agency matters which could have only an insignificant, de minimis economic effect upon his interests. More importantly, the act's "disclosure" provisions are aimed at requiring disclosure only if the official's interests could be "affected materially" by his public service. (§ 3700, subd. (c).) Moreover, unlike the 1969 act, the 1973 act does not require disclosure of the actual extent of the official's assets and interests, but only whether the value of his investment or real property interest

---

[7]We stated in *City of Carmel-By-The-Sea* v. *Young, supra,* 2 Cal.3d 259, 262, that "The public's right to know of matters which might bring about a conflict of interest between the public employment and the private financial interests of those holding public office is a laudable and proper legislative concern and purpose."

exceeds $10,000 (and whether the aggregate value of income, loans and gifts during the year exceeded $1,000). (§ 3700, subd. (b).) Finally, the disclosure requirements of the 1973 act apply only to certain specified high-level officials and not to every public official throughout the state. (§ 3700, subd. (a).) Disclosure of the economic interests of other public officials remains a subject for determination by the local boards and agencies involved. (§ 3704.)

In sum, we conclude that the 1973 act, on its face, contains sufficient assurances that unnecessary intrusions into personal privacy will not occur. Accordingly, we find that the act meets the basic and fundamental objections which led us to conclude in *City of Carmel-By-The-Sea* v. *Young, supra,* 2 Cal.3d 259, that the 1969 act was fatally overbroad. True, as we point out below, the 1973 act is not free of uncertainties and may generate considerable litigation before those matters are resolved. Yet, as the United States Supreme Court recently stated ". . . particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. . . . [W]hatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." (*Broadrick* v. *Oklahoma,* 413 U.S. 601, 615-616 [37 L.Ed.2d 830, 842, 93 S.Ct. 2908], involving a state statute restricting political activities of state employees.)

It is noteworthy that recently the courts in Illinois and Washington have upheld conflict of interest statutes similar in scope to the 1973 act, despite substantial overbreadth claims. (*Fritz* v. *Gorton* (1974) 83 Wn.2d 275 [517 P.2d 911, 922-927], app. dism. 417 U.S. 902 [41 L.Ed.2d 208, 94 S.Ct. 2596]; *Stein* v. *Howlett* (1972) 52 Ill.2d 570 [289 N.E.2d 409, 413-415].) These cases support our view that neither the right to privacy, nor the right to seek and hold public office, must inevitably prevail over the right of the public to an honest and impartial government.

■ (b) *Vagueness*—Plaintiffs assert that the 1973 act is unconstitutionally vague in various respects, requiring men of ordinary intelligence to guess at its meaning at the risk of incurring severe penalties. (See, e.g., *People* v. *Barksdale,* 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257], and cases cited.) It is undeniable that the terms "substantial conflict" and "material economic effect" are relative terms subject to some intepretation, and that reasonable men may differ with respect to the meaning of those terms.

Yet we think that the foregoing provisions are not so uncertain and indefinite as to render the act void on its face. ■ Statutes such as the

one before us must be given a reasonable and practical construction in accordance with the probable intent of the Legislature. (See *City of Santa Clara* v. *Von Raesfeld,* 3 Cal.3d 239, 248 [90 Cal.Rptr. 8, 474 P.2d 976]; *Kesler* v. *Department of Motor Vehicles,* 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900]; *County of Alameda* v. *Kuchel,* 32 Cal.2d 193, 199 [195 P.2d 17].) " ' "Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language." . . . It will be upheld if its terms may be made reasonably certain by reference to other definable sources.' " (*People* v. *Victor,* 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391]; see *Lockheed Aircraft Corp.* v. *Superior Court,* 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701].)

In *People* v. *Victor, supra,* 62 Cal.2d 280, 299, we noted that "Admittedly the word ['imminent'] is to some extent a relative one; but 'the law is full of instances where a man's fate depends on his estimating rightly, that is, as a jury subsequently estimates it, some matter of degree.' [Citation.]" Subsequently, in *People* v. *Daniels,* 71 Cal.2d 1119, 1128-1129 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677], we explained that "The law is replete with instances in which a person must, at his peril, govern his conduct by such nonmathematical standards as 'reasonable,' 'prudent,' 'necessary and proper,' *'substantial,'* and the like. Indeed, a wide spectrum of human activities is regulated by such terms . . . [giving examples]. Yet standards of this kind are not impermissively vague, provided their meaning can be objectively ascertained by reference to common experiences of mankind." (Italics added.)

■ The foregoing authorities convince us that the 1973 act is sufficiently definite in its terms to give adequate warning to public officials of its prohibitions and requirements.[8] As is made clear from the act's statement of legislative purposes (§ 3601),[9] the act was enacted to assure an independent, impartial and honest government. A "substantial" conflict or

---

[8]"[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions [in a federal statute] may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. '[T]he general class of offenses to which . . . [the provisions are] directed is plainly within [their] terms, . . . [and they] will not be struck down as vague, even though marginal cases could be put where doubts might arise.' [Citation.]" (*CSC* v. *Letter Carriers,* 413 U.S. 548, 578-579 [37 L.Ed.2d 796, 816, 93 S.Ct. 2880].)

[9]"A statute will be upheld if its terms may be made reasonably certain by reference to . . . its legislative history or purpose." (*People* v. *McCaughan,* 49 Cal.2d 409, 414 [317 P.2d 974]; *People* v. *Grubb,* 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100].)

a "material" effect upon economic interests is a conflict or effect which could undermine the foregoing goal by providing an economic incentive for deciding a particular official matter without regard to its merits, or with regard to its effect upon the official's pocketbook.

Moreover, the act does provide that "Each public agency may adopt guidelines for its officials in their determination whether they have an economic interest or interests which are in substantial conflict with the proper exercise of their official duties and powers . . . and in determining whether they have an economic interest in matters . . . . These guidelines shall not supersede the requirements of subdivisions (a) and (b) of Section 3625, but when complied with in the good faith belief that they are consistent with those provisions they shall exempt officials from the civil penalties in Section 3751 and the sanctions in Section 3753." (§ 3626.) When and if enacted, such guidelines could remove any remaining uncertainty in interpreting the act's provisions.

■ *Other contentions*—Plaintiffs have asserted various other contentions in addition to their central arguments regarding overbreadth and vagueness, discussed above. Most of these contentions pertain to the financial disclosure provisions in the 1973 act. Although we will comment briefly upon some of these provisions, it seems apparent that we cannot, and should not, attempt to pass upon the meaning or validity of each contested provision in every hypothetical context—adjudication of these matters must await an actual controversy, and should proceed on a case-by-case basis as the need arises. ■ As the Illinois Supreme Court explained in its opinion upholding the validity of the Illinois conflict of interests law, "We cannot, and need not in this proceeding, pass upon all hypothetical situations and tenuous circumstances which may be presented by counsel. While we recognize that a valid statute may be unconstitutionally applied, the precise limitations to be placed on the words in question can best be specified when actual cases requiring such interpretation are presented. [Citation.]" (*Stein* v. *Howlett, supra,* 289 N.E.2d. 409, 415; see *Broadrick* v. *Oklahoma, supra,* 413 U.S. 601, 615 [37 L.Ed.2d 830, 842].)

■ (i) *"Source of income"*—As we pointed out above, section 3700, subdivision (b), requires specified officials to disclose each "source of income, loans or gifts, aggregating two hundred fifty dollars ($250) or more in value, received in the preceding 12 months, including the name, address, and general description of the business activity of each source . . . ." Plaintiffs have forcefully contended that this provision would constitute a gross invasion of privacy if interpreted as requiring businessmen to reveal their confidential customer lists, lawyers to name their clients, or physicians

and psychiatrists to disclose their patients. We believe, however, that this problem has been rendered moot in practical effect by the clarifying amendment to section 3610, subdivision (e), enacted in 1974. That amendment defined the term "source of income" as "the business entity or activity of the official which earned or produced the income." Thus, as we read it, the act, as amended, would not require disclosure of the names of the official's customers, clients, or patients. Instead, the official must only disclose the specified information regarding his own business entity or activity which produced the income. For example, a landlord would disclose the address and receipts from his apartment building, not the names of his tenants and the rents paid by each.

Although the amendment does not take effect until January 1, 1975, the Legislature has expressly found and declared "that the amendments effected by this act are declaratory of the legislative intent in enacting" the 1973 act. (Stats. 1974, ch. 48, § 6, p. 161.) Although we are not bound by the Legislature's statement regarding the 1973 legislation, that statement properly may be considered in construing the provision in question. (See *West Pico Furniture Co.* v. *Pacific Finance Loans,* 2 Cal.3d 594, 609-610 [86 Cal.Rptr. 793, 469 P.2d 665]; *Stockton Sav. & Loan Bank* v. *Massanet,* 18 Cal.2d 200, 204 [114 P.2d 592]; *Flewelling* v. *Board of Trustees,* 178 Cal.App.2d 168, 172 [2 Cal.Rptr. 891].) We conclude that the 1973 act should be interpreted as requiring only the limited disclosure contemplated by the 1974 amendment. As a practical matter, it seems evident in light of the 1974 amendment and the legislative declaration which accompanied it that no court would invoke the severe penalties of the 1973 act against one whose disclosure statement meets the requirements of the 1974 amendment.

(ii) *"Indirect investment or interest"*—Plaintiff assert that section 3700, subdivision (b), is invalid as an unjustified invasion of privacy. The section requires an official to disclose the nature of the economic interests of his or her spouse and dependent children, and it appears the section would require disclosure of property in which the official has no beneficial interest, and over which he has no control. Plaintiffs assert that this provision constitutes an unreasonable invasion of the privacy of the official's spouse and dependent children. We disagree. First of all, under subdivision (c) of section 3700, the official need not disclose any interest, direct or indirect, which "could not be affected materially by any action, failure to act or decision taken by the public official acting within the scope of his official duties." Thus, for example, assets of a spouse which are located outside of the official's jurisdiction ordinarily would not fall within the act's disclosure provisions. Secondly, it is apparent that the act's "indirect

investment" provisions are reasonably necessary to promote the act's under-lying purposes, for otherwise an official could defeat the disclosure pro-visions by the simple means of transferring record title to his spouse or dependent children. Finally, even as to property in which the official has no beneficial interest whatever (such as his spouse's separate property), the act serves the legitimate purpose of assuring that the official disclose the fact that his spouse or dependent children own property which might be materi-ally affected by his official actions. Common sense tells us that although an official may have no economic interest in such property, nevertheless he may react favorably, or without total objectivity, to a proposal which could materially enhance the value of that property. Disclosure might substan-tially inhibit any such sympathetic reaction, thereby promoting the act's goals of honesty and impartiality in government.[10] We conclude that the "indirect investment" provision of section 3700 is valid.[11]

■ (iii) *Disclosure by former public official*—Plaintiffs maintain that section 3702, requiring a disclosure statement by every public official speci-fied in section 3700 who ceases to hold office, is without any valid public purpose. Yet section 3702 may have a desirable inhibiting effect upon officials who contemplate resigning prior to the April reporting date in order to avoid disclosing conflicting interests. Moreover, the disclosure statement may bring to light prior conflicts of interest situations which might have otherwise lay hidden from public view. We find that section 3702 is valid.

■ (iv) *Equal protection*—Plaintiffs contend that section 3700 im-properly excludes from the disclosure requirements many public officials (such as district officers, county counsel, and assessors) who should have been included therein. Yet it seems evident that the Legislature had the authority to specify those "high-level" officials to which the disclosure pro-

---

[10]In the *Carmel* case, *supra*, we indicated that one of the reasons for invalidating the 1969 act was that it required public officials to disclose the nature *and extent* of the investments of their spouses and minor children, if in excess of $10,000. (2 Cal.3d at p. 269, and fn. 4.) Our primary objections in *Carmel*, however, have been satisfied by the 1973 act which, as indicated above, narrows the disclosure requirement con-siderably. Although the 1973 act may to some extent invade the privacy of the offi-cial's spouse or dependent children, we think the public's interest in an honest and impartial government outweighs the interests of such persons in maintaining complete privacy in their financial affairs.

[11]Plaintiffs further contend that section 3700, subdivision (b), places an intolerable burden upon the official to determine the nature and extent of the property owned by his spouse or dependent children in order to comply with the "indirect investment and interest" disclosure requirement. Ordinarily, however, such information would be readily available. In the rare case in which the information is withheld or truly unavailable following a good faith effort to ascertain it, the official undoubtedly would be excused from a technical failure to comply with the act.

visions should apply—in our *Carmel* case, we pointed out that one of the *failings* of the 1969 act was that its provisions applied to *all* public officials regardless of the nature of their responsibilities. Moreover, section 3704 empowers all public agencies to adopt conflict of interest rules governing disclosure of the financial interest of their officials. It is conceivable that some of the officials excluded from the terms of section 3700 will nevertheless be required by the rules of their own agency to make financial disclosure.

We conclude that the 1973 act is valid on its face, and that the trial court erred in declaring the act to be unconstitutional. The stay order entered by this court on March 28, 1974, is terminated. Since the effect of this stay was to postpone indefinitely the date upon which public officials must file the financial statements required under section 3700, we order that such statements be filed during the month of September 1974, so that these statements will be available for review by the public in ample time prior to the November elections. Thereafter, such statements should be filed during the month of April, as specified in section 3703 of the act.[12]

The judgment is reversed. The case is remanded to the trial court with directions to enter judgment for the defendant in accordance with the views expressed herein.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., and Clark, J., concurred.

**MOSK, J.**—I concur.

There are, as plaintiffs correctly assert, no significant substantive differences between this act and the public disclosure statute enacted in 1969. Yet a majority of this court held the 1969 act unconstitutional in *City of Carmel-By-The-Sea* v. *Young* (1970) 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313], and now find this act valid because it accomplishes the same legitimate aims "in a less intrusive and considerably more limited" manner. That, I suggest, does not create a *constitutional* distinction between the two statutes.

As developed in my dissent in *Carmel* (2 Cal.3d at p. 277 et seq.), the majority in analyzing the 1969 disclosure law improperly invoked a value

---

[12]Statements filed during the month of September 1974 shall disclose the same information and cover the same period of time as such statements would have contained had they been filed during the month of April 1974. Statements required to be filed under Government Code sections 3701 and 3702 shall be filed as required within the times designated by those sections commencing July 18, 1974.

judgment on a matter of legislative policy. In scrutinizing the 1973 act, they use the same scale once again, but this time they read the weight differently.

Therefore I concur in the result reached by the majority, but for the general reasons set forth in my *Carmel* dissent. Had my colleagues joined me then, as they now do in effect, the people of California would not have been unnecessarily denied the legislatively declared benefits of a public disclosure law these past four years. Perhaps one should accept this fruitless delay with a certain equanimity. Inevitably another day has come, and with it application of Justice Rutledge's quotation in *Wolf* v. *Colorado* (1949) 338 U.S. 25, 47 [93 L.Ed. 1782, 1795, 69 S.Ct. 1359]: " 'Wisdom too often never comes, and so one ought not to reject it merely because it comes late.' "