## GOLDTRAP v. COMMISSION ON ETHICS, et al.
No. 75-1093.
Circuit Court, Leon County.
September 9, 1975.

Julius F. Parker, Jr., Tallahassee, for the plaintiff.

Robert L. Shevin, Attorney General, John A. Barley, Assistant Attorney General, for the defendants.

BEN C. WILLIS, Circuit Judge.

*Final declaratory judgment:* This cause came on for final hearing before the court on the pleadings, the pre-trial stipulation of the parties and on the argument and briefs of counsel for the respective parties, and the court being otherwise advised, it is ordered and adjudged—

The court has jurisdiction of the parties and of the subject matter and this case involves a justiciable controversy under the provisions of Chapter 86, Florida Statutes.

The facts are not in dispute. The plaintiff is a duly qualified, and acting member of the Lee County Board of County Commissioners, having been elected in the general election of 1972 for a term which will expire in January 1977. He has declined to file a statement of disclosure prescribed by §5 of Chapter 74-177, Laws of Florida, which created a new §112.3145, Florida Statutes, contending that such disclosure is violative of his right of privacy, which right is within the penumbra of the First, Fourth and Fifth Amendments to the U. S. Constitution and a reserved but unspecified right contemplated in the Ninth Amendment to the federal constitution, and applicable to the states under the Fourteenth Amendment. He also contends that it is unconstitutional as applied to him in that it requires him to perform an act in order to continue in office which was not required when he was elected.

The defendant, Commission on Ethics, is created by Chapter 74-176 "to serve as guardian of the standards of conduct" for public officers and employees, such standards being set forth in Part III of Chapter 112, Florida Statutes. It is given the duty to receive and investigate complaints of violation of the code of ethics, and if findings of violations are made they shall be transmitted to the person involved and to the official having power to take disciplinary action. In the case of officers liable to removal from office or suspension by the governor, such complaints, presumably with the findings of violation, shall be reported to the governor and the cabinet.

The governor, under §7, Article IV of the state constitution has the power, by executive order stating the grounds and filed with the secretary of state, to suspend any county officer "for malfeasance, misfeasance, neglect of duty" and on other grounds not here material. Under the same section, the Senate may, in proceedings prescribed by law, remove from office or reinstate the suspended official.

Chapter 74-177, Laws of Florida, deals with certain standards of conduct for public officers and employees and prescribes certain duties and disclosures for such persons and also candidates for the offices involved. In the statement of legislative intent and policy it is said — "It is essential to the proper conduct and operation of government that public office not be used for private gain other than remuneration provided by law." It further states that the public interest "requires that the law protect against any conflict of interest and establish standards for the conduct of elected officials . . . in situations where conflicts may exist." It is further declared that "no officer . . . of a county . . . shall have any interest, financial or otherwise, direct or indirect, or engage in any business transaction, or professional activity or incur any obligation of any nature which is in substantial conflict with the proper discharge of his duties in the public interest."

Among the standards prescribed are —

(1) prohibiting the acceptance of any gift, favor or service of value to the recipient that would cause a reasonably prudent person to be influenced in the discharge of official duties;

(2) prohibiting ownership in any business entity doing business with the agency of which he is an officer, except when business is awarded pursuant to competitive bids or to a consultant in accordance with F.S. 287.055;

(3) requiring the filing of a statement disclosing the fact of being an officer, director, partner, proprietor, associate or general agent of or owning an interest in any business entity which is granted a privilege to operate, or is doing business with an agency of which he is an officer, and giving pertinent information on the relationship;

(4) prohibiting corrupt use or attempt to use the official position or perform official duties to secure special privileges, benefits or exemptions for himself or others;

(5) prohibits accepting other employment with any business entity subject to the regulation of, or doing business

with, an agency of which he is an officer and prohibits him from accepting other employment that will create a conflict between his private interests and the performance of his public duties, or will impede the full and faithful discharge of his public duties; and

(6) prohibiting disclosure of information gained by reason of his official position for personal gain or benefit of himself or anyone else.

(Section 3 of act which amends §112.313, Florida Statutes 1973.)

The plaintiff does not challenge any of the foregoing provisions of the act. He does challenge §5, which would create §112.3145, Florida Statutes, which requires all public officers and candidates for office to file certain disclosures of sources of income, interests held in certain specified regulated businesses; a list of clients represented for a fee before an officer's agency, including representation by a partner or associate of the professional firm (there are certain exceptions not necessary to relate in this case); disclosure of any debt "on which a preferential rate of interest substantially below the then customary and usual under the circumstances rate is charged, and each and every debt which in sum equals more than his net worth"; a list of the total assets, listed in order of size, excluding any asset which is equal to or less than 15% of the total (real property not situate in Florida and personal residence and recreational or vacation homes are excluded from the list). "Each listed asset shall be identified only by type, location, address or legal description."

The disclosure of sources of income requires such sources that constitute 10% or more of such person's gross income for the preceding taxable year, but excludes dividends or interest, moneys from guardianship, alimony, child support, retirement or disability compensation and other compensation derived from any level of government service, or political contributions defined by F.S. 106.08 and 111.011. However, if he receives "any income from any business entity in which he has a material interest (direct or indirect ownership of 10% or more of total assets of the business) and such income is 15% or more of the gross income of the public officer" he is also required to disclose the source of all gross income of the business entity for the preceding taxable year, and shall indicate the source of the income, but no such income of the business need be reported by source and percentage if less than $1,500 from one source.

The statement of disclosure is required to be made by county officers with the clerk of the circuit court of the county in which the officer is a resident (F.S. 112.3145(1) ). It becomes a public

record (F.S. 112.3146 — set forth in §6 of Chapter 74-177), and it shall be open at all times for a personal inspection by any citizen of Florida who may not be refused this privilege by those in charge of such records. §119.01, Florida Statutes 1973.

Under §8 of Chapter 74-177, amending F.S. 112.317, an intentional violation of any provision of "this part," including F.S. 112.3145, by an officer "shall constitute grounds for removal from office."

The act by its terms took effect July 1, 1974. The statement of disclosure was originally required to be filed no later than May 15 of each year, but Chapter 75-5, Laws of Florida, extended the deadline to July 15, 1975.

The requirements of reporting sources of income exclude many important sources and seem to be mostly concerned with compensation for services, rents and royalties, commissions, capital gains, honoraria or the various means of obtaining income other than in the form of the categories excluded. A significant requirement is that one holding a "material interest" in a business entity, that is, 10% or more of the total assets or capital stock of the entity, must disclose the source of all gross income of the business which constitutes 15% or more of the entity's gross income for the preceding taxable year. This would apply if the person involved received 15% or more of his gross income from the entity.

The requirement of disclosing interests of 10% or more in certain regulated businesses is rather clear and would require a listing of such businesses and the percentage of the extent of his interest in them.

Disclosure of a debt on which a preferential interest rate is charged refers to a "rate of interest substantially below the then customary and usual under the circumstances rate." It also refers to every debt which in sum exceeds the net worth of the person involved. The term "substantially below" is not defined, nor is "the then customary and usual under the circumstances rate" given more specificity. However, the intent appears to refer to loans or other debts bearing interest at a rate so greatly below the prevailing rate for a similar transaction as to indicate a clear preferential treatment over the general public.

The listing of each asset in excess of 15% of the total assets is clear with the exclusions of out of state realty, personal residence and recreational or vacation homes.

The plaintiff points out that when he was elected to his present office there was no requirement of the filing of financial disclosure which the statute now demands, and that to impose a new condi-

tion for his continuance in office is prescribing a new qualification which may not be validly done. The defendants contend that the statute does not place an additional "qualification" for holding office but merely prescribes an additional "duty." Cited in support of the power to do this is §5(c), Article II, Florida Constitution, which says —

> "The powers, *duties*, compensation and method of payment of state and county officers shall be fixed by law."
> (Emphasis supplied)

It is argued that "qualifications" deal with personal attributes of the officer, such as knowledge, ability, experience, or other acquirement which fits a person for the office he holds. A "duty" is said to refer to a human action which the law requires to be performed. A "duty" of an officer may be fairly stated to be those actions or courses of conduct which the law makes obligatory upon the holder of the office. "Qualifications" normally refer to the existence of certain elements such as age, experience, health, education, residence, or other status which the law deems requisite of one to be suitable to serve as a particular officer. In a strict context the commands of §112.3145 neither prescribe a "qualification" for the office nor a "duty" of the exercise of the office. It is an act required of the individual officer that he make public certain facts relating to his private financial and business affairs. Its purpose is to expose such interests so that the public may be aware of possible areas in which his private financial concerns may pose a conflict of interest in the performance of the duties of his office. It would be a considerably strained construction to interpret the disclosure requirements as a qualification for office. It is more in the nature of a demand that the person occupying the office reveal the existence of certain interests, and in this concept it may be regarded as a "duty" of one desiring to continue in office. This brings to the forefront the necessity to determine whether such a requirement is an unconstitutional invasion of the plaintiff's privacy.

It appears to be well settled that a citizen possesses a certain measure of a right to privacy which is within the penumbra of the First Amendment rights to freedom of speech and similar freedoms, of Fourth Amendment rights against unreasonable searches and seizures, and Fifth Amendment rights against compulsory self incrimination. It has also been recognized that our federal constitution contemplated other rights reserved to the people by such a reference in the Ninth Amendment and that the right of privacy is included within such reserved but unspecified rights. Mapp v. Ohio, 6 L. Ed. 2d 1081; Griswold v. Connecticut, 14 L. Ed. 2d 1081; Shelton v. Tucker, 5 L. Ed. 2d 231. In recognition of this right, statutes and regulations requiring disclosures deemed unnec-

essary to accomplish legitimate state aims have been struck down. It is said that the power to regulate must be exercised so as not, in obtaining a permissible end, to infringe the protected freedom. Shelton v. Tucker, supra. The problem then before the court is whether or not §112.3145 prescribes a requirement reasonably necessary to accomplish a legitimate state aim, or does it infringe the constitutionally protected right of privacy.

It is conceded that safeguards against a conflict of interest of public officials in the exercise of their public duties are legitimate state aims. The complaint is that the disclosures required go beyond that which would reveal a conflict. It is pointed out that the statute requires disclosure of interests which would have no bearing whatsoever on the particular office involved and would not in any way be helpful in exposing a conflict of interest. Cited in support is the City of Carmel-by-the-Sea v. Young, (Cal. Sup. Ct. 1970) 466 P. 2d 225, in which it was held that a financial disclosure statute directing that every public officer and each candidate file as a public record a statement describing the nature of his investments and those owned by either spouse or minor child is constitutionally overbroad in that it intrudes alike into the relevant and irrelevant private financial affairs of the numerous public officials and employees covered by the statute and is not limited to only such holdings as might be affected by the duties or functions or a particular public office. In reaching that conclusion the court recognized that elimination and prevention of conflict of interest of public officials is a proper state purpose. However, it held that such proper purpose alone does not justify means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. It was said that there must be a balancing of interests between government's need to expose or minimize possible conflict of interest on the one hand, and the right to maintain privacy in one's personal financial affairs while seeking or holding public office on the other.

Following this decision, a 1973 conflict of interest statute was passed in California which required certain disclosures but specifically provided that no interest need be disclosed "which could not be affected materially by any action, failure to act or decision taken by the public official acting within the scope of his official duties." The constitutionality was again challenged on the ground it was overbroad, but was upheld by the Supreme Court of California in County of Nevada v. MacMillen, (Cal. Sup. Ct. 1974) 522 P.2d 1345. The court deemed the exclusion of disclosure of interests which could not be affected by the officer's functions served to remove the objections in the *Carmel* decision.

It will be here observed that the California rulings would be fully

in support of the contentions of the plaintiff here.

This problem has been considered by the courts of other states which have reached the conclusion that financial disclosure laws which are much more demanding than §112.3145 are not overbroad so as to violate rights of privacy. In Stein v. Howlett, 52 Ill. 2d 570, 289 N. E. 409 (1972), it was held that a statute requiring public officials to disclose various connections and interests was not unconstitutionally overbroad. It was also held that the statute promoted a compelling public interest which was paramount to the rights of the individual. It was pointed out that the act was designed to avoid any conflict of interest between government and its officers and employees, and one of its purposes "was to disclose any abuse of office and to instill in the public, trust and confidence in its government and officials." It was further said — "For these reasons it seems appropriate to us to require disclosures of sources of substantial amounts of income and of significant business interests. It would be an anomaly to enact a statute, designed to eliminate conflicts of interest between public trust and private gain, in such manner that the person affected is permitted to decide when a financial interest relates to his public employment. The purpose of the legislation supports the necessity for broad statutory coverage in this area."

In Fritz v. Gorton, 83 Wash. 2d 275, 517 P. 2d 911 (1974), it was held that financial disclosure requirements contained in an Initiative adopted by the electorate were not unconstitutional. Discussing the contention that its requirements were overbroad, the court said —

> "Obviously the extensive reporting required . . . may result in disclosures of information not unequivocally related to the public office in question. Respondents assert the Initiative does not sufficiently relate required disclosure to the nature of the office. It would be, however, an insurmountable legislative task to tailor disclosures to each of literally a myriad of public posts, and an anomaly to require each individual to make a personal determination as to what items of his financial affairs would be relevant."

Other cases upholding disclosure measures and rejecting the claim of violation of privacy are Montgomery County v. Walsh, Md. 1975, 336 A. 2d 97; Lehrhaupt v. Flynn, 129 N.J. Super. 327, 323 A.2d 537; and Illinois State Employees Ass'n v. Walker, 57 Ill. 2d 512, 315 N.E. 2d 9, cert. den. in Troopers Lodge No. 41, Fraternal Order of Police v. Walker (1974) 42 L. Ed. 659.

The Florida law, §112.3145, does not require minute disclosure of all financial interests, but rather those of such magnitude and relative significance as likely to be either consciously or subcon-

sciously influential to a material degree in the attitudes and outlook of the public person involved. To be sure there is some ambiguity and imprecision in the language employed but that is not at issue here. Also, the requirement of disclosing certain sources of income of a business entity in which the public figure has a material interest may very well be a requirement the public person could not meet. Ownership of a ten per cent interest does not necessarily confer a right to have access to the information prescribed. Furthermore, the rights of the business entity itself may preclude such a disclosure. These observations are made only to point out some possible areas of controversy which are not now before the court in this case. However, the court does not perceive that the statute under attack is facially unconstitutional as an invasion of privacy. The rationale of the cases cited which has upheld financial disclosure laws of other states appears to be the more persuasive. It is not overlooked that this law may produce negative rather than affirmative results insofar as the best interests of the public are concerned. It may prove to be self-defeating and will serve to produce resignations of fine public officers and discourage other highly qualified persons from entering public service. However, it is not the prerogative nor the function of the court to substitute what it may deem to be the better judgment for that of the legislature in the enactment of laws. The tremendous interest and concern of the public in the integrity of its governmental agencies, which has become more intense as a result of revelations of corruption in government, has no doubt motivated the legislature to enact this law which seeks not only to thwart conflict of interest in government personnel, but to restore confidence and respect in those involved in the operation of government. Any person who seeks or accepts a governmental position forfeits some privacy, and the intrusion of §112.3145 into the private affairs of the plaintiff and others similarly situated is deemed to be appropriate to and not overbroad to attain a legitimate state aim.

The portions of Chapter 74-177 pertaining to intentional violations of this law constituting a ground for "removal from office" is only a legislative expression of opinion. The power to remove from office is initially vested in the governor to suspend by executive order on certain specified grounds including "malfeasance, misfeasance, neglect of duty." §4, Art. VII, Fla. Const. This power is executive and is in no sense either judicial or legislative. See State ex rel. Hardie v. Coleman, 115 Fla. 119, 155 So. 192. Removal is by the Senate which functions as a court to examine into and determine whether or not the governor exercises the power of suspension in keeping with the constitutional mandate. State ex rel. Hardie v. Coleman, supra. It is the sole responsibility and preroga-

tive of the governor to determine whether or not an officer subject to suspension by him has been guilty of misfeasance, malfeasance or neglect of duty, in the constitutional sense of those terms, so as to warrant suspension from office and the sole responsibility of the Senate to determine whether such officer shall be removed or reinstated. Whether an officer who fails to comply with this statute is to be suspended and removed must be determined by, in the exercise of their constitutional powers, the governor and the Senate, not by legislation.

Having determined as hereinbefore mentioned that §112.3145, as enacted in §5, Chapter 74-177, is not facially unconstitutional as violating the right of privacy of the plaintiff, there is no other relief which is affordable to the plaintiff except to recognize that plaintiff has acted in good faith in bringing this action and in securing a declaration of rights. In view of this it is deemed that he should not be considered in willful violation of this statute if he files the prescribed disclosure on or before October 1, 1975. He should be given a reasonable opportunity to make a decision as to whether he will make the filing or resign from office. It will be assumed that the defendants will honor the moratorium herein mentioned and no coercive steps need be herein ordered.

Wherefore declaration of rights as hereinbefore set forth are hereby rendered, and all prayers and petitions not herein otherwise mentioned and dealt with are hereby denied.