[Civ. No. 14789. Fourth Dist., Div. One. June 17, 1977.]

JOHN W. WITT, as City Attorney, etc., Plaintiff and Respondent, v.
FLOYD L. MORROW, as City Councilman, etc.,
Defendant and Appellant.

**COUNSEL**

Thomas & Witt and Earl J. Thomas for Defendant and Appellant.

John W. Witt, City Attorney, and Michael B. Poynor, Deputy City Attorney, for Plaintiff and Respondent.

Daniel H. Lowenstein, Robert M. Stern, Kenneth H. Finney, Natalie E. West and Michael J. Baker as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BROWN (Gerald), P. J.—** Floyd L. Morrow, a San Diego City Councilman, appeals the declaratory judgment and order permanently enjoining him[1] from participating in decisions concerning the Linda Vista Shopping Center Project because of a conflict of interest. Suit was brought by John W. Witt, San Diego City Attorney.

On November 21, 1972, the San Diego City Council, acting as the Redevelopment Agency of the City of San Diego with Councilman Floyd L. Morrow as deputy chairman, adopted a proposed redevelopment plan for the Linda Vista Shopping Center (Center).

Morrow is also president and attorney for Basic Economic Education, Inc. (BEE), a nonprofit corporation which makes investments and uses its profits to further the spread of Henry George Economics. He is paid $550 a month. BEE's official corporate address and telephone number are the same as those for Morrow's private law practice; BEE's members have contributed to Morrow's political campaigns; BEE's executive committee has met in Morrow's private law offices and his city council office.

During July 1974, while Morrow was its president, BEE bought three properties, improved with apartments, across the street from the Linda Vista Shopping Center for $256,500. It also acquired one-half interest in a parcel very close to the Center for forgiveness of a $10,000 loan.

Morrow revealed his relationship with BEE and its purchase of two properties across from the Center to the Redevelopment Agency by letter on August 29, 1974. On January 7, 1975, the Political Reform Act of 1974 became effective. It provides: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest." (Gov. Code, § 87100.)

Section 87103 of the Government Code explains what a "financial interest" is:

---

[1]Under Government Code section 91003, subdivision (a), the court may enjoin violations or compel compliance with the Political Reform Act of 1974; when a violation has occurred, the court may set aside the official action as void (Gov. Code, § 91003, subd. (b)).

"An official has a financial interest in a decision within the meaning of Section 87100 if it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on:

"... . . . . . . . . . . . . . . . . . . .

"(c) Any source of income, other than loans by a commercial lending institution in the regular course of business, aggregating two hundred fifty dollars ($250) or more in value received by or promised to the public official within twelve months prior to the time when the decision is made; or . . . ."

Morrow says he has made the disclosures required by the statute[2] and should not have been disqualified from participating in these decisions because there is no evidence to support a finding of fact that decisions regarding the Center have had or will have a "material financial effect" on his own pocketbook. Because the money would accrue to BEE or, more precisely, to a trust of which BEE is the beneficiary, rather than directly to him, Morrow argues his interest is remote; because he is paid a set monthly fee, rather than a percentage, Morrow says BEE's fortunes and failures are of no consequence to him.

Morrow's argument his financial interest is too remote to cause a conflict of interest is based on *City of Carmel-By-The-Sea* v. *Young,* 2 Cal.3d 259 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]. There, the court struck down the 1969 statutes requiring public disclosure of personal finances by public officials because the officers had to report all their income and investments whether related to their official duties or not. ■ A financial disclosure law may only require reports when there is a relation between the function of the office the person holds and the source, nature or location of the income (see *City of Carmel-By-The-Sea* v. *Young, supra,* 2 Cal.3d 259, 270). ■ Here, Morrow is

---

[2]Government Code section 87203 requires public officials to disclose their financial affairs: "[The members of City Council] shall, . . . file a statement disclosing his investments, his interests in real property and his income during the period since the previous statement filed under this section or Section 87202 . . . ."

Government Code section 87207 dictates the content of an income statement:

"(a) When income is required to be reported under this article, the statement shall contain, except as provided in subsection (b):

"(1) The name and address of each source of income aggregating two hundred fifty dollars ($250) or more in value, or twenty-five dollars ($25) or more in value if the income was a gift, and a general description of the business activity, if any, of each source; . . . ."

employed directly by BEE; he is paid a salary directly by BEE; he participated actively and directly in BEE's decision to buy the properties in Linda Vista; as a member of the redevelopment agency, he would participate directly in decisions on the redevelopment of the Center across the street; these decisions on land use may affect the value of BEE's investment. With regard to the Linda Vista project, there is a relation between Morrow's function as a member of the redevelopment agency and the near-by landowner, BEE, which pays him a salary directly affecting his pocketbook. The fact any increase in value of the property would accrue to BEE or the trustee of the trust through which these properties were purchased, does not make Morrow's interest remote. Such an interpretation would mean as long as he was paid a set salary by a third party, a public official would never have a conflict of interest between his public duties and his private employment because his interest would always be remote.

Morrow claims decisions concerning the redevelopment in Linda Vista have no "material financial effect" on him because he receives a set amount each month. The unstated implication is even if BEE were to reap large profits Morrow's salary would remain the same. However, the statute is concerned with whether there will be "a material financial effect . . . on [a]*ny source of income* [over $250]. . . ." (Italics ours— Gov. Code, § 87103). Is there substantial evidence in the record to support such a finding with regard to BEE? There was evidence the properties in question constituted 25 percent of BEE's assets. An appraiser testified properties closer to the renewal area would improve faster than those farther away. This is sufficient to support the trial court's finding. There was no need to give specific dollar amounts or percentage increases of the appreciation BEE might expect.

■ Morrow argues the experts' testimony only showed redevelopment of the Center *could* have a significant impact on the value of BEE's properties and did not *prove* it. The statute, however, requires only it be "*reasonably foreseeable* . . . the decision will have a[n] . . . effect." (Italics ours—Gov. Code, § 87103.) There was testimony to this effect.

Morrow asserts it is unconstitutional to automatically disqualify a public official from participating in decisions which may affect the investments of an entity which pays him over $250 per year. However, the whole purpose of the Political Reform Act of 1974 is to preclude a government official from participating in decisions where it appears he

may not be totally objective because the outcome will likely benefit a corporation or individual by whom he is also employed. (See *County of Nevada* v. *MacMillen,* 11 Cal.3d 662, 674 [114 Cal.Rptr. 345, 522 P.2d 1345].) That is the situation here.

Morrow argues that BEE is not a "source of income" under the statute because this phrase refers only to himself and his business activity which produces the income and not the names of his customers or clients (see *County of Nevada* v. *MacMillen, supra,* 11 Cal.3d 662, 675). However, here Morrow characterizes his business activity as being an employee of BEE which is the source of this income; if BEE were a client of his law firm then the source of this income would be Morrow's legal services. However, in either case, Morrow's argument is misdirected since implementation of the conflicts of interest laws requires that one know the name of the individual or enterprise creating the conflict. For example, if the public did not know BEE was Morrow's employer and BEE owned land next to the area to be redeveloped, the possible conflict of interest would never be brought to light.

■ Morrow argues there is no conflict of interest here because there is no evidence his activities as president and attorney of BEE and his receipt of $550 per month would be affected in any way by any decision on this project. His concept of what constitutes a conflict of interest is too narrow. It is not just actual improprieties which the law seeks to forestall but also the appearance of possible improprieties. Any employee, in the private or public sector, wishes to keep his job and maintain good relations with his employer. A person who must make decisions which may affect his employer's purse is in a situation where he may not give full consideration to the merits of the decision.

One cannot serve two masters (Matthew 6:24).

The judgment and order are affirmed.

Cologne, J., and Staniforth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 11, 1977.