BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE JEFF DENHAM, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a city council modify a lease agreement with a private company if a member of the city council is a regional manager of the company?
 CONCLUSION
A city council may modify a lease agreement with a private company if a member of the city council is a regional manager of the company, provided that the company has at least 10 other employees and that the interested council member has been employed by the company for more than three years prior to joining the city council, is not an officer or director of the company, and abstains from any involvement in modifying the agreement.
 ANALYSIS
We are informed that an investor-owned water company provides water services to a city, its residents, and businesses. Since 1985, the company has leased water mains, pumping and storage facilities, and service pipes from the city. The lease has been renewed since 1995 without modification, but the city is now considering whether to change various terms of the lease. In November 2004, a regional manager and shareholder of the water company was elected to the city council. He is not an officer or director of the company, he has had no involvement with the lease agreement on behalf of the company since his election to the city council, and he owns less than one percent of the company's outstanding shares of stock. Under these circumstances, may the city renegotiate and modify the lease? We conclude that it may do so under specified conditions.
The focus of our analysis is upon the conflict-of-interest prohibition of Government Code section 1090,[1] which states in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."
Section 1090 codifies the common law prohibition against "self-dealing" with respect to contracts. (See Stigall v. Cityof Taft, (1962) 58 Cal.2d 565, 571; City of Oakland v.California Const. Co. (1940) 15 Cal.2d 573, 576; BreakZoneBilliards v. City of Torrance (2000) 81 Cal.App.4th 1205, 1230;Stockton P. S. Co. v. Wheeler (1924) 68 Cal.App. 592, 597.) "[T]he prohibited act is the making of a contract in which the official has a financial interest." (People v. Honig (1996)48 Cal.App.4th 289, 333.)
When the officer with the proscribed financial interest is a member of a public body or board, the prohibition of section 1090extends to the entire body or board — here, the city council. As the court observed in Fraser-Yamor Agency, Inc. v. County ofDel Norte (1977) 68 Cal.App.3d 201, 211-212:
 "[W]here the contract is entered into by the body or board of which the employee or officer is a member, the element of participation is present by the mere fact of such membership irrespective of whether the employee or officer personally abstains from engaging in any of the embodiments resulting in the making of the contract. This interpretation is evident from the language of the statute which, in pertinent part, provides that an officer or employee `shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . .'" (Fn. omitted.)
Accordingly, when a conflicting financial interest is present, any contract made by the body or board is void and unenforceable even if the financially interested member refrains from participating in any of the steps involved in making the contract. (See Thomson v. Call (1985) 38 Cal.3d 633, 649;Stigall v. City of Taft, supra, 58 Cal.2d at pp. 570-571.)
Here, we have a city officer making a contract in his official capacity as a member of a body or board within the meaning of section 1090. A renewal of an agreement — even when the renewal involves no renegotiation and when every term of the agreement remains unchanged — constitutes the making of a new contract. (See 81 Ops.Cal.Atty.Gen. 134, 137-138 (1998).) So too, of course, does the renegotiation or amendment of an existing agreement. (City of Imperial Beach v. Bailey (1980)103 Cal.App.3d 191, 196-197; 85 Ops.Cal.Atty.Gen. 176, 177, fn. 2 (2002); 81 Ops.Cal.Atty.Gen. 274, 278 (1998).) A lease of city property plainly constitutes a "contract" for purposes of section 1090. (See, e.g., 85 Ops.Cal.Atty.Gen., supra, at p. 177 [long-term lease of city property to nonprofit corporation]; 81 Ops.Cal.Atty.Gen., supra, at p. 135 [lease of city land for farming]; see also 87 Ops.Cal.Atty.Gen. 92, 93 (2004) [lease of hospital facilities]; 87 Ops.Cal.Atty.Gen. 9, 11 (2004) [lease of school equipment].) And we note that the phrase "making of a contract" has been broadly defined to include the various activities leading up to execution of the contract, including preliminary discussions, negotiations, compromises, reasoning, and planning. (See Stigall v. City of Taft, supra, 58 Cal.2d at pp. 569-571; City Council v. McKinley (1978) 80 Cal.App.3d 204,212-213; People v. Sobel (1974) 40 Cal.App.3d 1046, 1052;Millbrae Assn. for Residential Survival v. City of Millbrae
(1968) 262 Cal.App.2d 222, 237; Schaefer v. Berinstein (1956)140 Cal.App.2d 278, 291-292; 86 Ops.Cal.Atty.Gen. 138, 145, fn. 3 (2003); 85 Ops.Cal.Atty.Gen. 34, 35 (2002); 80 Ops.Cal.Atty.Gen. 41, 42-44 (1997).)
With respect to prohibited "financial interests" under section 1090, such interests extend to expectations of economic benefit. (People v. Honig, supra, 48 Cal.App.4th at p. 325 ["a financial interest within the meaning of section 1090 may be direct or indirect and includes the contingent possibility of monetary or proprietary benefits"]; see People v. Gnass (2002)101 Cal.App.4th 1271, 1288, fn. 6; BreakZone Billiards v. City ofTorrance, supra, 81 Cal.App.4th at pp. 1230-1231;Fraser-Yamor Agency, Inc. v. County of Del Norte, supra,
68 Cal.App.4th at pp. 212-215; People v. Vallerga (1977)67 Cal.App.3d 847, 865; People v. Darby (1952) 114 Cal.App.2d 412,433, fn. 4.) All the circumstances of the transaction as a whole must be considered in determining whether a proscribed financial interest is present. (Thomson v. Call, supra, 38 Cal.3d at p. 645; People v. Honig, supra, 48 Cal.App.4th at pp. 315, 320.)
The lease agreement in question allows the water company to conduct its water delivery business within the territory of the city. It thus indirectly benefits the city council member, who derives most of his income from his employment as a salaried manager of the company. (See 88 Ops.Cal.Atty.Gen. 106, 108 (2005) [healthcare district director has financial interest in advertising contract "between his employer and the district board of which he is a member"]; see also, e.g., Fraser-Yamor Agency,Inc. v. County of Del Norte, supra, 68 Cal.App.3d at pp. 211-215 [county supervisor has financial interest in insurance policies procured through insurance agency of which he is part owner]; 81 Ops.Cal.Atty.Gen., supra, at pp. 135-136 and fn. 2 [city council member has financial interest in lease agreement and water purchase agreement between city and business entity of which he is a general partner].)
Looking at the prohibition of section 1090 alone, we would find that the lease could not be renewed or modified while the company's regional manager serves on the city council. (See Cityof Imperial Beach v. Bailey, supra, 103 Cal.App.3d at pp. 196-197 [city council prohibited from exercising renewal option on concession contract where council member is concession operator]; 86 Ops.Cal.Atty.Gen. 138, 140-141 (2003) [section 1090 would be violated if city entered retainer contract with law firm of which council member is a partner]; 85 Ops.Cal.Atty.Gen.,supra, at pp. 178-180 [section 1090 prohibits city council from executing extension of construction contract where council member owns and manages subcontracting architectural firm]; 84 Ops.Cal.Atty.Gen. 34, 37-38 (2001) [section 1090 prohibits city council from modifying terms of contract with corporation of which mayor is sole shareholder].)[2]
However, section 1090 does not stand alone. The Legislature has defined certain financial interests as "remote interests" (§ 1091) and "noninterests" (§ 1091.5) that, if present, allow avoidance of the absolute proscription of section 1090.[3]
In the case of a "remote interest," section 1091 permits execution of the contract if the interested officer discloses his or her financial interest in the contract to the public agency, such interest is noted in the agency's official records, and the officer abstains from any participation in the making of the contract. (See 88 Ops.Cal.Atty.Gen., supra, at p. 108; 87 Ops.Cal.Atty.Gen. 23, 25-26 (2004); 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen. 230, 235-237 (1995); 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) If a "noninterest" is present, as defined in section 1091.5, the contract may be made with the officer's participation, and disclosure of the noninterest is not generally required. (See City of Vernon v.Central Basin Mun. Water. Dist. (1999) 69 Cal.App.4th 508, 515; 83 Ops.Cal.Atty.Gen., supra, at p. 247; 78 Ops.Cal.Atty.Gen. 362, 369-370 (1995).)
In the present circumstances, the only exception that merits extended discussion is the "remote interest" category specified in subdivision (b)(2) of section 1091:
 "That of an employee or agent of the contracting party, if the contracting party has 10 or more other employees and if the officer was an employee or agent of that contracting party for at least three years prior to the officer initially accepting his or her office and the officer owns less than 3 percent of the shares of stock of the contracting party; and the employee or agent is not an officer or director of the contracting party and did not directly participate in formulating the bid of the contracting party."[4]
Here, we are informed that the water company has hundreds of employees, the council member has been employed by the company for more than 30 years prior to his election to the city council, he owns less than 3 percent of the company's stock, and he is neither an officer nor a director of the company.
Hence, the council member's financial interest in the modification of the water company's contract with the city qualifies as a "remote interest" within the meaning of section 1091, subdivision (b)(2). As long as he discloses his financial interest to the city council, has the interest noted in the city's official records, and abstains from any participation in the modification of the lease, the prohibition of section 1090 would be inapplicable. (See 88 Ops.Cal.Atty.Gen., supra, at p. 108; 87 Ops.Cal.Atty.Gen., supra, at pp. 25-26; 83 Ops.Cal.Atty.Gen., supra, at p. 248.) The city may engage in future renewals of its lease with the water company so long as the council member maintains his complete lack of personal involvement in the contracting process.
Finally, we note that a separate statutory scheme, the Political Reform Act of 1974 (§§ 81000-91014), generally prohibits public officials from participating in "governmental decisions" in which they have a financial interest. (See § 87100; 88 Ops.Cal.Atty.Gen. 32, 33-34 (2005); 78 Ops.Cal.Atty.Gen.,supra, at pp. 368-374; 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen. 45, 46 (1987).) Under the facts presented, such an interest would be present here. (See §§ 87103, subds. (a) and (d), 82034; Cal. Code Regs., tit. 2, §§ 18704-18705; DowneyCares v. Downey Community Development Com'n. (1987)196 Cal.App.3d 983, 988-991; Witt v. Morrow (1977)70 Cal.App.3d 817, 823; 70 Ops.Cal.Atty.Gen., supra, at p. 46). However, such a disqualifying conflict of interest is deemed to be adequately remedied if the official abstains from participating in the decision-making process affecting his or her economic interest. (See, e.g., Hamilton v. Town of Los Gatos (1989)213 Cal.App.3d 1050, 1058-1059; 86 Ops.Cal.Atty.Gen. 142, 143 (2003).) Consequently, compliance with the terms of section 1091 would also satisfy the requirements of the Political Reform Act of 1974.
We conclude that a city council may modify a lease with a private company if a member of the city council is a regional manager of the company, provided that the company has at least 10 other employees and that the interested council members has been employed by the company for more than three years prior to joining the city council, is not an officer or director of the company, and abstains from any involvement in modifying the agreement.
[1] All references hereafter to the Government Code are by section number only.
[2] Contracts made by the legislative body before the interested official is elected to office are unaffected by section 1090. (See, e.g., 85 Ops.Cal.Atty.Gen., supra, at p. 177.)
[3] Additionally, more specialized exceptions to section 1090 are set forth in sections 1091.1-1091.4.
[4] Subdivision (b)(3) of section 1091 is inapplicable here because the council member owns shares of stock in the water company; it would also be inapplicable if he were found to be "in a primary management capacity with the contracting party." Subdivision (b)(14) of section 1091 is inapplicable because it is available only to former employees of the contracting business entity, and not to those currently employed. (88 Ops.Cal.Atty.Gen., supra, at p. 110.)