[Civ. No. 17001. Third Dist. Feb. 6, 1979.]

MARCIA KIMURA, Plaintiff and Appellant, v.
HAROLD ROBERTS, as Mayor, etc., et al., Defendants and Appellants.

## Counsel

Blease, Vanderlann & Rothschild, Richard L. Gilbert and Jay-Allen Eisen for Plaintiff and Appellant.

David T. Romney, City Attorney, for Defendants and Appellants.

## Opinion

**REGAN, Acting P. J.**—These are appeals from a judgment granting a peremptory writ of mandate ordering the City Council of Woodland to reinstate Marcia Kimura to her former position as a member of the

Planning Commission of the City of Woodland. The city council appeals from that portion of the judgment granting the peremptory writ of mandate. Kimura cross-appeals from that portion of the judgment denying her prayer for attorney's fees.

The facts are not in dispute, and judgment was entered as a matter of law upon Kimura's motion for summary judgment, after the trial court found there were no triable issues of fact.

Kimura was in her second four-year term as a member of the Planning Commission of the City of Woodland when her husband (to whom she had been married prior to any service on the commission) was elected to the Woodland City Council in March 1976. At the meeting of the council on June 21, 1976, Harold Roberts, Mayor of Woodland and member of the council, presented a motion to remove Kimura from her office. The mayor stated specifically that his motion was pursuant to the code of the City of Woodland and was based on "moral conflict of interest rather than a legal conflict of interest."[1] The mayor later explained by declaration in this action that the quoted phrase "had reference to the appearance of bias which resulted from the marital relationship."

The council at its June 21, 1976, meeting by a three to two vote recorded in the minutes "approved the removal of Marcia Kimura as a member of the Planning Commission effective immediately."

Kimura contended successfully before the trial court that her removal from office pursuant to Ordinance No. 549 violated her constitutional rights to be married and to hold public office simultaneously.

On appeal, the city takes the position, as it did at trial, that the existence of the marital status between Kimura and the newly elected councilman is a matter in which there is a compelling public interest as the decisions of the planning commission on zoning and the like are subject to review by the city council. The city points to the conflict of interest which might exist, or which might give the appearance to the public of existing, in a situation where the official decisions of a wife were officially reviewable by her husband. The city also points out that Kimura

---

[1]The mayor had reference to Ordinance No. 549, which provides in the pertinent portions of sections 1, 2 and 3 that (a) the members of the planning commission are appointed by the mayor with approval of the city council for four-year terms; (b) the members serve without compensation; and (c) any member of the commission may be removed by the mayor "at his pleasure," subject to approval of the council, or may be removed by a majority vote of the council.

was not removed from the position because of her exercise of her constitutional right to marry her husband, but rather because her husband after their marriage had sought out and been elected to the position of city councilman.

We see no legitimate constitutional issue in this case. The law is clear that a planning commissioner serving at the pleasure of the appointing power may be terminated for any reason, without cause, notice or a hearing so long as the reason for removal is not an unconstitutional one. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 778-779 [97 Cal.Rptr. 657, 489 P.2d 537]; *Ball* v. *City Council* (1967) 252 Cal.App.2d 136, 141 [60 Cal.Rptr. 139]; *Grant* v. *Adams* (1977) 69 Cal.App.3d 127, 137 [137 Cal.Rptr. 834].)

The trial court held that removal of a married woman from the office of planning commissioner because her husband was elected to the city council, having review powers over her decisions, was not "constitutionally permissible." The court's rationale was that the "right" to hold public office is a fundamental right of citizenship "protectable in the courts" (see, e.g., *Fort* v. *Civil Services Commission* (1964) 61 Cal.2d 331, 335 [38 Cal.Rptr. 625, 392 P.2d 385]), and concommitantly that removal from a public office on the basis of marriage to a city council member, "*without more,*" is constitutionally prohibited. (See, e.g., *Cleveland Board of Education* v. *LaFleur* (1974) 414 U.S. 632, 639 [39 L.Ed.2d 52, 60, 94 S.Ct. 791]; *Boren* v. *Department of Employment Dev.* (1976) 59 Cal.App.3d 250, 259 [130 Cal.Rptr. 683].) The error in this syllogism is that the record shows there *was more* than the mere marriage of Kimura to a man of her choice, which motivated the mayor and the city council to remove her from office. It was the *act* of her husband in seeking out the office of city councilman and the *fact* that he was elected to that office which triggered the removal mechanism. It was not the act of marriage or Kimura's status of being married, as such.

We note the trial court also determined there was no moral conflict or other conflict by virtue of the marital status. We address ourselves to this concept, as the parties spent some time in the trial court and also on appeal discussing it.

The city attorney had given his informal legal opinion to Kimura and her husband before the election that there would be no legal conflict of interest in his holding the office of city councilman while his wife was on the planning commission, nor does the law *prevent* their both holding

office. After the election the city attorney advised Kimura's husband informally that as a city councilman he might "have to abstain on particular matters when such matters had been earlier heard by the Planning Commission." Such a course of action would obviously be impracticable since the city council consists of five members and would be rendered impotent by the absence of a fifth vote on review of important planning commission decisions where the council vote was tied and the commission's decision would be automatically affirmed by a form of default. In our view there is no doubt that either an actual bias or conflict of interest, or the *appearance* thereof, would or could at times be present. An analogy exists in connection with the courts, where the law deems it necessary to prevent bias, conflicts of interest, or the *appearance* of either. (See Code Civ. Proc., § 170, subd. 3—disqualification of judge "related" to a party; Code Civ. Proc., § 602, subd. (3)—consanguinity or affinity of a juror with a party as disqualification.) Such rules have been categorized by the courts as necessary not only to guard actual impartiality but also to insure public confidence. (See *Tatum* v. *Southern Pacific Co.* (1967) 250 Cal.App.2d 40, 42 [58 Cal.Rptr. 238, 25 A.L.R.3d 1325].)

A planning commissioner and a council member (with review powers) married to each other can conceivably raise a substantial question of fairness and bias, prejudice or influence in the vital county planning processes, obvious enough to have an effect on public confidence in such processes. As amply demonstrated by the record, the "finding" of the trial court that no "conflict" arose from the relationship between the two officeholders misses the mark. On the other hand, the finding of the mayor and the city council that an actual or implied conflict of interest existed, is eminently rational, practical and legally sound in light of the record. We conclude that the trial court erred in issuing a peremptory writ of mandate to restore Kimura to her office, and we shall reverse that part of the judgment.

The cross-appeal by Kimura from that portion of the judgment denying her prayer for attorney's fees under Government Code section 800 has become moot. Under that section, a litigant is entitled to attorney's fees from a public agency which has wronged the litigant by arbitrary or capricious action. Kimura was not subjected to arbitrary or capricious action.

The judgment is reversed, except for that portion thereof, which denies the prayer for attorney's fees. The trial court is directed to enter a new judgment denying the petition for writ of mandate. Each party shall bear its own costs on appeal.

Paras, J., and Evans, J., concurred.

The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied May 24, 1979.