TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-701 |
| of | : | |
| | : | January 24, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE CALIFORNIA PUBLIC UTILITIES COMMISSION has requested an opinion on the following question:

Is the California Public Utilities Commission required to discharge an employee who marries an employee of a regulated utility?

CONCLUSION

The California Public Utilities Commission is required to discharge an employee who marries an employee of a regulated utility.

ANALYSIS

Section 303 of the Public Utilities Code **Footnote No. 1** provides:

"No person in the employ of or holding any official relation to any corporation or person that is subject in whole or in part to regulation by the commission, and no person owning stocks or bonds of any such corporation or who is in any manner pecuniarily interested therein shall be appointed to or hold the office of commissioner or be appointed or employed by the commission. If any such person becomes the owner of such stocks or bonds or becomes pecuniarily interested in such corporation otherwise than voluntarily, his office or employment shall become vacant unless within a reasonable time he divests himself of such ownership or interest."

We are asked to determine whether the California Public Utilities Commission ("Commission") must discharge an employee who marries an employee of a regulated utility. Would section 303 apply in such circumstances, and if so, is the statute constitutional?

Because of California's community property laws, it is evident that an employee of the Commission who marries an employee of a regulated utility would be "pecuniarily interested" in the utility due to his or

her spouse's compensation. Furthermore, this interest may not be nullified by an agreement that the spouse's compensation be treated as his or her separate property, since even separate property is liable for the necessaries of life of the other spouse. (Fam. Code, § 914; 78 Ops.Cal.Atty.Gen. 230, 237 (1995); 65 Ops.Cal.Atty.Gen. 305, 308 (1982).) In *Nielsen* v. *Richards* (1925) 75 Cal.App. 680, for example, the court concluded that a husband had an interest in the separate property of his wife, so that she had to be discharged from employment with the county schools where he was the county superintendent. Besides relying upon the statutory "necessaries of life" obligation (*id.*, at pp. 685-687), the court quoted from an Illinois case as follows:

> ". . . `There is, moreover apart from this pecuniary interest, an intimacy of relation and affection between husband and wife, and of mutual influence of the one upon the other for their common welfare and happiness, that is absolutely inconsistent with the idea that the husband can occupy a disinterested position as between his wife and a stranger in a business transaction. He may, by reason of his great integrity, be just in such a transaction; but unless his marital relations be perverted, he cannot feel disinterested--and it is precisely because of this feeling of interest that the law forbids that he shall act for himself in a transaction with his principal.'" (*Id.*, at p. 689.)

The court concluded:

> ". . . In the case at bar the county of Butte was entitled to the unbiased judgment of the county school superintendent. Here we have contained not merely the personal and confidential relation existing between husband and wife, but also the pecuniary advantage which was being gained by the husband by reason of the contract which we have heretofore specified." (*Id.*, at p. 690.)

More recently, in *County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 676, the court observed that the separate property of the wife of a public official "might be materially affected by his official actions," since "[c]ommon sense tells us that . . . he may react favorably, or without total objectivity, to a proposal which could materially enhance the value of that property."

Accordingly, on its face section 303 would prohibit continued employment by an employee of the Commission who marries an employee of a regulated utility.

It has been suggested, however, that section 303 has been superseded by the conflict of interest provisions of the Political Reform Act of 1974 (Gov. Code, § 81000-91015; "Act"). The Act generally prohibits *participation* in any governmental action by a public officer or employee in which he or she has a "financial interest." (See Gov. Code, §§ 82029, 82030, 82048, 87100-87103). Under the Act, in case of a conflict of interest, only abstention from participation is required. (See *Metropolitan Water Dist.* v. *Fair Political Practices Com.* (1973) 73 Cal.App.3d 650, 658; *Witt* v. *Morrow* (1977) 70 Cal.App.3d 817; 66 Ops.Cal.Atty. Gen. 156, 161-162 (1983).) Discharge from employment is not necessary.

How do the provisions of the Act affect the requirements of section 303? Government Code section 81013 states:

> "Nothing in [the Act] prevents the Legislature or any other local agency from imposing additional requirements on any person if the requirements do not prevent the person from complying with [the Act]. If any act of the Legislature conflicts with the provisions of [the Act], [the Act] shall prevail."

We believe that an additional and more stringent regulation would not present a "conflict" with the Act. Compliance with the more stringent standard would necessarily constitute compliance with the Act's less stringent standard. (See 62 Ops.Cal.Atty.Gen. 90, 99-100 (1979).) In 59 Ops.Cal.Atty.Gen. 604, 617-618

stringent standard. (See 62 Ops.Cal.Atty.Gen. 98, 99-100 (1979).) In 59 Ops.Cal.Atty.Gen. 604, 617-618 (1976), we faced a similar question concerning the continued viability of Government Code section 1090, a more stringent regulation than the Act with respect to contractual conflicts of interest. We concluded that the more stringent requirements remained viable after the Act's adoption in 1974. This conclusion was recently reinforced by the Court of Appeal in *People* v. *Honig* (1996) 48 Cal.App.4th 289, 330, where the court explained in part:

> ". . . [T]he [Act] specifically provides that it is not exclusive. Section 81013 provides: `Nothing in this title prevents the Legislature or any other state or local agency from imposing additional requirements on any person if the requirements do not prevent the person from complying with this title. If any act of the Legislature conflicts with the provisions of this title, this title shall prevail.' By its terms, additional requirements, such as a prohibition against making a contract in which one is financially interested, would conflict with the [Act] only if those requirements prevented the official from complying with the [Act]. Since nothing in section 1090 would prevent or inhibit an official from complying with the [Act], it cannot be considered to be in conflict with [the Act]." (Fn. omitted.)

Similarly here nothing in section 303 would prevent or inhibit an officer or employee of the Commission from complying with the Act's requirements.

No other statutory provision appears applicable to whether the Commission must apply the terms of section 303 in the present circumstances. We are left, then, with the issue of whether section 303 is constitutional. In addressing this issue, we note first that section 303 does not prohibit the marriage of anyone to anyone. The "fundamental right" to marry (see *Turner* v. *Safley* (1986) 482 U.S. 78, 94-95; *Loving* v. *Virginia* (1967) 388 U.S. 1, 12; *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143, 161; 65 Ops.Cal.Atty.Gen., *supra*, at 311) is at most incidentally affected by the terms of section 303. The courts have long sanctioned conflicts of interest prohibitions that might have an indirect impact upon a marriage relationship. (See *Kimura* v. *Roberts* (1979) 89 Cal.App.3d 871 [wife removed from city planning commission when husband elected to city council].)

What section 303 does prohibit is an employee's continued employment with the Commission when the proscribed financial interest is present. Does an employee have a constitutional right to continued public employment? This question was recently answered in *Graham* v. *Kirkwood Meadows Pub. Util. Dist.* (1994) 21 Cal.App.4th 1631, 1643-1645, where the court stated:

> "As to the assertion of a right to continued employment, there is no fundamental constitutional right to work for, or to have continued employment with, a particular public or private employer. (*Rittenband* v. *Cory*, *supra*, 159 Cal.App.3d 410; *Kubik* v. *Scripps College* (1981) 118 Cal.App.3d 544, 549; *Hetherington* v. *State Personnel Bd.* (1978) 82 Cal.App.3d 582, 589.) . . .

> ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> "`Notwithstanding the principle enunciated in *Truax* v. *Raich* (1915) 239 U.S. 33, 41 [60 L.Ed. 131, 135 . . .] that the right to work at a lawful occupation is an essential component of liberty, the United States Supreme Court consistently has refused to recognize a fundamental right to particular employment. [Citations.] California courts have followed substantially the same reasoning, holding [] that there is no fundamental right to work for a particular employer, public or private. [Citations.]' (*Kubik* v. *Scripps College*, *supra*, 118 Cal.App.3d at p. 549, fn. omitted [mandatory retirement of college music professor reviewed under rational basis test].)"

In *Graham*, the court upheld the dismissal of a public employee for not residing within three miles of his place of employment. The court found the public agency's three-mile requirement to be "reasonably

drawn to effectuate the legitimate purpose of ensuring continued operations in bad weather conditions." (*Graham* v. *Kirkwood Meadows Pub. Util. Dist.*, *supra*, 21 Cal.App.4th at 1642.) Even though the agency's policy failed "to achieve perfection," the court explained that "the reasonableness of a policy is evaluated based upon whether it is designed to achieve its legitimate objectives." (*Id*., at p. 1641.)

As indicated in *Graham*, what is constitutionally required for a statute such as section 303 is that it bear a "rational relationship" to a "legitimate governmental objective." In 69 Ops.Cal.Atty.Gen. 191, 197 (1986), we stated:

"Section 1 of the Fourteenth Amendment to the Constitution of the United States provides *inter alia* that no state shall deprive any person of life, liberty or property without due process of law. A virtually identical proscription is found in the California Constitution, article 1, section 7. The concept of substantive due process requires that a statute must bear a rational relationship to a legitimate governmental objective. (Williamson v. Lee Optical Co. (1955) 348 U.S. 483, 491.) However, the law need not be in every respect logically consistent with its aims to be constitutional; the courts will not review the wisdom or providence of state laws regulatory of business and industrial conditions. (*Id*. at pp. 487-488; Ferguson v. Skrupa (1963) 372 U.S. 726. 731-732.)" **Footnote No. 2**

The obvious objective of section 303 is to prevent a Commission officer or employee from acting in his or her best interests rather than in the best interests of the public. In analyzing Government Code section 1090, the contractual conflicts-of-interest prohibition, the court in *People* v. *Honig*, *supra*, 48 Cal.App.4th at 324-325, observed:

". . . In *United States* v. *Mississippi Valley Generating Co.*, *supra*, 364 U.S. 520 [5 L.Ed.2d 268], in a decision our state courts have often relied upon, the United States Supreme Court considered a federal conflict-of-interest statute similar to section 1090. There the high court noted that the federal statute was preventative in nature and was aimed at what might have happened rather than what actually happened. (364 U.S. at p. 549-550 [5 L.Ed.2d at p. 288].) Its purpose was to eliminate temptation and to this end spoke in broad, absolute terms, thus establishing `an absolute standard of conduct.' (*Id*. at pp. 550, 559 [5 L.Ed.2d at pp. 288-289, 294].) . . .

. . . . . . . . . . . . . . . . . . . .

"Section 1090, like the federal statute at issue in *United States* v. *Mississippi Valley Generating Co.*, *supra*, establishes an objective and absolute standard of conduct for public officials. In this context the California Supreme Court long ago noted: `"For even if the honesty of the agent is unquestioned, and if his impartiality between his own interest and his principal's might be relied upon, yet the principal has in fact bargained for the exercise of all the skill, ability, and industry of the agent, and he is entitled to demand the exertion of all this in his own favor."' (*San Diego* v. *S.D. & L.A.R.R. Co.* (1872) 44 Cal. 106, 113.) For over a hundred years our courts have consistently held that our conflict-of-interest statute, now embodied in section 1090, is intended to enforce the government's right to the absolute, undivided, uncompromised allegiance of public officials by proscribing any personal interest. (See *Thompson* v. *Call*, *supra*, 38 Cal.3d at p. 648; *Stigall* v. *City of Taft*, *supra*, 58 Cal.2d at p. 569.) To this preventative end, section 1090 establishes a broad, objective proscription which is violated when an official places himself in an `ambivalent position' or an `ambiguous situation,' by having any financial interest in an official contract, and which does not depend upon the actuality of a personal influence on his decisions."

It may be argued that section 303 should not apply to employees of the Commission who have

clerical or ministerial positions and do not make decisions affecting the regulated utilities in which they have pecuniary interests. Is the prohibition of section 303 too broadly worded? A similar argument was raised in *Vance* v. *Bradley* (1979) 440 U.S. 93, where the court upheld a requirement that participants in the foreign service retirement system retire from their government positions at age 60. The requirement met the rational basis test, since it was at least arguable that a significant percentage of people over age 60 might not perform their duties as foreign service officers as ably as those who were younger. (*Id*., at p. 111.)

Other cases lend support to applying the terms of section 303 in the proposed circumstances. In *Keely* v. *State Personnel Board* (1975) 53 Cal.App.3d 88, the court upheld the discharge of a state prison guard for owning a liquor store. The court agreed that the guard might have a conflict of interest in selling liquor to parolees knowing that many parole agreements contain a requirement that the parolee either totally abstain from alcohol or abstain from excess drinking. (*Id*., at pp. 92-93, 97.)

In *Reece* v. *Alcoholic Bev. etc. Appeals Bd.* (1976) 64 Cal.App.3d 675, the wife of a sheriff's detective owned a grocery store and cafe as her separate property. Relying upon *Nielsen* v. *Richards*, *supra*, 75 Cal.App. 680, and *County of Nevada* v. *MacMillen*, *supra*, 11 Cal.3d 662, the court ruled that the detective had an indirect interest in his wife's business, including the beer and wine license issued for the premises. (*Id*., at pp. 682-683.) It concluded that the administrative regulation prohibiting law enforcement officers from holding liquor licenses applied to the detective, even though he was not assigned to patrol duties. While the purpose of the regulation was "to prevent a conflict of interest between liquor licensees and those involved in the enforcement of liquor laws," the court relied upon *Keely* v. *State Personnel Bd.*, *supra*, 53 Cal.App.3d 88, in finding a conflict where the detective's indirect ownership "`might lead to nonenforcement or lenient enforcement of violations on [the] premises by fellow officers . . . .'" (*Id*., at p. 682.)

In *Kimura* v. *Roberts*, *supra*, 89 Cal.App.3d 871, a city planning commissioner was removed from office because her husband was elected to the city council. She claimed that "her removal from office pursuant to Ordinance No. 549 violated her rights to be married and to hold public office simultaneously." (*Id*., at p. 873.) The court rejected her claim, stating that "there is no doubt that either an actual bias or conflict of interest, or the *appearance* thereof, would or could at times be present." (*Id*., at p. 875.)

In *Hobbs, Wall & Co.* v. *Moran* (1930) 109 Cal.App. 316, a city council member was the manager of a store where the city purchased $250 in supplies. The court rejected the store's claim for payment even though the supplies "were obtained in perfect good faith at reasonable prices":

". . . As manager of the mercantile business, which employment demanded strict loyalty to his employer, it may be inferred Dressler, as a councilman, was not free to negotiate a bargain in behalf of the city as favorable to the municipality as though these conflicting interests did not exist. Dressler's membership on the council may reasonably be expected to influence his associates in purchasing supplies for the city. The desire to favor a fellow-councilman, unwarranted confidence, or carelessness in bargaining for supplies might result in a substantial loss to the city. It is not necessary to show actual fraud, dishonesty or loss to invalidate the transaction. The purpose of the statute is to remove all indirect influence of an interested officer as well as to discourage deliberate dishonesty.

"Nothing in the relationship of a public officer should prevent him from exercising absolute loyalty and undivided allegiance to the best interest of the municipality he serves.

"Although Mr. Dressler had no greater interest in the transaction than is shown by the mere agency as business manager of the store from which the supplies were purchased, even though they were obtained in perfect good faith at favorable prices, still the transaction was void and the claims were illegally allowed." (*Id*., at p. 319.)

As the courts have thus indicated, we do not question the wisdom of the Legislature in enacting section 303, as long as it has a rational relationship to a legitimate governmental objective. Under the statute, the officials and employees of the Commission who make decisions regarding regulated utilities will not be influenced by their own pecuniary interests or by supervisors, associates, coworkers, or subordinates who have pecuniary interests in regulated utilities. The Commission is entitled "to the absolute, undivided, uncompromised allegiance of" all of its officers and employees without personal financial interests influencing Commission decisions, whether the influence is from the employee's own personal interest or that of a coworker. Section 303 is a broad, objective proscription that is violated when the Commission officer or employee places himself or herself in a financial conflict of interest position. A rational relationship exists between the terms of section 303 and eliminating the temptation of corrupting pecuniary influences. **Footnote No. 3**

In answer to the question presented, therefore, we conclude that the Commission is required to discharge an employee who marries an employee of a regulated utility.

\* \* \* \* \*

---

**Footnote No. 1**
All references hereafter to the Public Utility Code are by section number only.
**Footnote No. 2**
The rational basis test would also be applicable if section 303 were challenged on equal protection grounds (U.S.Const., 14th Amend., § 1 ["No state shall . . . deny to any person within its jurisdiction the equal protection of the laws"];Cal. Const.art. 1, § 7,subd. (a) ["A person may not be . . . denied equal protection of the laws"]).
(See *Heller* v. *Doe* (1993) 509 U.S. 312, 319-321; *Graham* v. *Kirkwood Meadows Pub. Util. Dist., supra,* 21 Cal.App.4th at 1642-1646.) We thus need not address separately this constitutional provision.
**Footnote No. 3**
Of course, the Legislature has the authority to exempt the spousal interest in question from the prohibition of section 303. For example, in conflicts of interests involving the contractual obligations of public agencies, the Legislature has exempted a spouse's employment or officeholding if the employment existed for at least one year prior to the election or appointment of the contracting official. (Gov. Code, § 1091.5, subd. (a)(6); see 69 Ops.Cal.Atty.Gen. 255 (1986); 69 Ops.Cal.Atty.Gen. 102 (1986); 65 Ops.Cal.Atty.Gen. 305 (1982).)