[No. B119276. Second Dist., Div. Four. Jan. 25, 1999.]

CITY OF VERNON, Plaintiff and Appellant, v.
CENTRAL BASIN MUNICIPAL WATER DISTRICT et al., Defendants
and Respondents.

COUNSEL

David B. Brearley, City Attorney; Richards, Watson & Gershon, Glenn R. Watson and Mitchell E. Abbott for Plaintiff and Appellant.

Lemieux & O'Neill, Steven P. O'Neill and W. Keith Lemieux for Defendants and Respondents Central Basin Municipal Water District and James William Zastrow.

Nossaman, Guthner, Knox & Elliott and Henry S. Weinstock for Defendant and Respondent Peerless Water Company.

## OPINION

**VOGEL (C. S.), P. J.—**

### INTRODUCTION

Plaintiff, the City of Vernon (plaintiff), sought injunctive and other relief against defendants James William Zastrow (Zastrow), Central Basin Municipal Water District (District), and Peerless Water Company (Peerless). District is a municipal water district organized under the Municipal Water District Law of 1911 (Wat. Code, § 71000 et seq.). Zastrow is an elected member of District's board of directors. Zastrow is also an owner, stockholder, and salaried president of Peerless, a private water company. District

sells reclaimed water to 23 purveyors of reclaimed water, who resell it to users such as parks, nurseries, and golf courses. Peerless is one of those 23 purveyors of reclaimed water.

Plaintiff contended this arrangement violates two different statutory schemes prohibiting financial conflicts of interest by governmental officials. Plaintiff contended that Zastrow's participation in decisions to set the rates to be charged to the purveyors for reclaimed water, and to set a standby assessment on all land within the district to help finance District's water conservation program, would violate the prohibition in the Political Reform Act of 1974, specifically Government Code section 87100, against officials making, participating in making, or using their official position to influence a governmental decision in which they have a financial interest. Plaintiff sought an injunction to restrain Zastrow in the future from participating in decisions pertaining to assessments and water rates for District's reclaimed water program.

Plaintiff further contended that Peerless's continuing receipt of reclaimed water from District constituted continuing implied contracts which should be voided pursuant to the other statutory scheme, Government Code section 1090,[1] which prohibits officials' being financially interested "in any contract" made by any board of which they are members.

On the parties' cross-motions for summary judgment, the trial court granted judgment for defendants. As to Peerless's continuing receipt of reclaimed water from District, the trial court concluded section 1090 was not violated, by virtue of the statutory exception in section 1091.5, subdivision (a)(3), which provides there is no prohibited interest if the official's financial interest is only "[t]hat of a recipient of public services generally provided by the public body or board of which he or she is a member, on the same terms and conditions as if he or she were not a member of the board." As to Zastrow's future participation in decisions on the setting of assessments or water rates, the trial court declined to decide whether such participation would violate section 87100 and declined to issue an injunction; noting that Zastrow had refrained from voting on those issues in the most recent applicable year, 1995-1996, the court was not convinced an injunction against future participation was warranted or authorized. The court held alternatively that (1) the injunction provision in the Political Reform Act, section 91003, does not authorize injunctions against future conduct, and (2) assuming that it does, the court, in the exercise of its discretion and in light of Zastrow's recent abstentions, was not persuaded of an imminent probability that Zastrow would violate the act in the future.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

We affirm. The trial court correctly held that the continuing ·sales of reclaimed water to Peerless constitute "public services generally provided," within the meaning of section 1091.5, the statutory exception to section 1090. The trial court did not abuse its discretion in declining to enter an injunction under the Political Reform Act.

## FACTS

The determinative issues on this appeal can be narrowed to two: (1) whether the trial court correctly held that, assuming the continuing receipt by Peerless of reclaimed water from District constitutes a series of contracts, such contracts are excepted from section 1090 by section 1091.5, subdivision (a)(3), and (2) whether the trial court erred in refusing to enjoin, pursuant to the Political Reform Act, future participation by Zastrow in decisions setting water rates for reclaimed water and setting the standby assessment. The trial court's memorandum opinion relied on facts which plaintiff admitted are undisputed, and for the purpose of discussion assumed in support of plaintiff certain other facts. The facts essential to disposition of this appeal may be summarized as follows.

Plaintiff is a municipal corporation. Defendant District is a municipal water district organized under the Municipal Water District Law of 1911. District serves 25 cities, including plaintiff and the City of Bellflower. Historically District has acted as an intermediary in the purchase of potable water from the Metropolitan Water District of Southern California and the sale of such water to purveyors. The purveyors then resell to retail customers. Peerless is a private utility and a water purveyor which retails water within District's territory.

Defendant Zastrow is an elected member of District's board of directors, and has been for 12 years. Zastrow is also an owner, stockholder, and president of defendant Peerless. He owns approximately 40 percent of Peerless's stock and is trustee for the remainder of its stock.

District initiated a reclaimed water project. Reclaimed water is not potable. It is used to irrigate golf courses, parks, landscaping, and nurseries. Use of reclaimed water for this purpose conserves the supply of potable water. In the early 1990's District constructed 60 miles of pipeline and other facilities for intake, storage, and pumping of reclaimed water.

Since 1991 District has imposed an annual "standby assessment." The standby assessment is used to help finance the reclaimed water project and other water conservation programs such as installation of low-flow devices and public education about water conservation. The standby assessment

applies equally to all land within the district to which water is made available. (Wat. Code, §§ 71630, 71631 [maximum rate of $10 per acre or per parcel less than one acre].) Peerless is located in and resells its reclaimed water in the City of Bellflower. Reclaimed water is not being supplied to any properties in plaintiff.[2]

District decided to sell its reclaimed water through 23 wholesale purveyors. District delivers reclaimed water through its system to the purveyors, who then resell it to customers at higher rates. Peerless is one of 23 such purveyors of reclaimed water. District sets the rate at which it sells reclaimed water to purveyors. One rate for reclaimed water applies equally to all 23 purveyors.

Zastrow voted on approval of District's water rates for 1994-1995, but abstained from voting on them for 1995-1996, the most recent year before this litigation. Zastrow voted to approve the standby assessment in 1993-1994 and 1994-1995, and participated in two matters leading up to the 1995-1996 standby assessment, but abstained from voting on the standby assessment for 1995-1996.

## DISCUSSION

Two different statutory schemes with different scope are involved in this case. Section 1090 relates specifically to a "contract" by a board or body, in which a member of that board or body has a financial interest. Section 87100, on the other hand, relates to an official's "participat[ion]" in any "governmental decision" in which the official has a financial interest. (*People* v. *Honig* (1996) 48 Cal.App.4th 289, 329 [55 Cal.Rptr.2d 555] [difference in scope between section 1090 and section 87100].) Section 1090 analysis applies to whether Peerless's continuing receipt of reclaimed water is a "contract" prohibited by Zastrow's membership on the board and his financial interest in such "contract." (Plaintiff's second cause of action.) Section 87100 analysis applies to Zastrow's participation in the governmental decisions to set the rates for reclaimed water and to set the standby assessment. (Plaintiff's first cause of action.)

### *Contract*

■ Section 1090 provides, "[D]istrict . . . officers . . . shall not be financially interested in any contract made by them in their official capacity,

---

[2]A map of District included within a request for judicial notice below indicates that District encompasses a significant portion of Los Angeles County east of the 110 freeway to the Orange County line, with Vernon in the northwest portion and Bellflower in the south-central portion. It appears that plaintiff's interest in this case is that its businesses are concerned about having to pay the standby assessment without receiving reclaimed water. In previous proceedings on demurrer, the trial court upheld plaintiff's "standing."

or by any body or board of which they are members. . . . [¶] As used in this article, 'district' means any agency of the state formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries."

Plaintiff's theory is that when District delivers and Peerless accepts reclaimed water, an implied contract arises from the offer and acceptance, and therefore if Zastrow has a prohibited financial interest in such contract because of his financial interest in Peerless, section 1090 is violated. The trial court assumed for discussion that a "contract" was formed, and defendants do not specifically challenge that assumption on appeal. The trial court resolved the section 1090 issue in favor of defendants by concluding that even assuming a "contract" arose, the statutory exception in section 1091.5, subdivision (a)(3) expressly deems Zastrow's interest in such contract to be nondisqualifying.

Section 1091.5, provides: "(a) An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following: [¶] . . . [¶] (3) That of a recipient of public services generally provided by the public body or board of which he or she is a member, on the same terms and conditions as if he or she were not a member of the board."

The trial court found this exception applies because delivery of reclaimed water is a public service generally provided by District, at an established rate of general applicability to all purveyors of reclaimed water, on the same terms and conditions. We agree.

Plaintiff offers several invalid arguments to avoid this conclusion. Plaintiff contends the exception does not apply unless Zastrow, personally, is the recipient of reclaimed water. This argument is patently contrary to the words of section 1091.5, which state that the "officer" (here Zastrow) shall not be deemed interested in a contract "if *his or her interest is any of the following.*" (Italics added.) Zastrow's "interest," according to the theory of the case, is his interest in Peerless by virtue of his ownership and presidency of Peerless. In the context of applying section 1091.5 to this case, Peerless, the recipient of the public services, is Zastrow's "interest."

Plaintiff also contends that delivery of reclaimed water does not constitute "public services generally provided," because the reclaimed water is provided only to 23 wholesale purveyors of reclaimed water, of which Peerless is one. Plaintiff argues that the phrase "public services generally provided" *must be* construed to mean "services provided to the general public," or to the "public at large." We disagree. Plaintiff is advocating that we rewrite the

words of the statute. Public agencies provide many kinds of "public services" that only a limited portion of the public needs or can use. This does not derogate from their characterization as "public services" according to the ordinary meaning of those words. The fact that District distributes reclaimed water through intermediaries does not negate the public service nature of providing reclaimed water. There are 23 purveyors, all of whom are charged the same set rate. This is sufficient to establish that the public services, delivery of reclaimed water, are "generally provided" "on the same terms and conditions as if [Zastrow] were not a member of the board." There is no special rate for Peerless.[3]

The parties cite no case construing the "public services generally provided" language of section 1091.5, subdivision (a)(3). But the trial court's conclusion is supported by an opinion of the Attorney General. (80 Ops.Cal.Atty.Gen. 335 (1997).) There the Attorney General said the "apparent intent of this provision is to exempt a board member's receipt of public services that are given under 'the same terms and conditions' to the other customers of the public agency." (*Id.* at pp. 337-338.) The Attorney General opined the Legislature contemplated "the provision of services in accordance with previously adopted rate schedules applicable to all customers." (*Id.* at p. 338.) This describes the public services which District provided here, delivery of reclaimed water at a previously adopted rate applicable to all of District's customers of reclaimed water.

### Injunction

On the first cause of action, under the Political Reform Act, plaintiff requested that the court enjoin Zastrow from making, participating in, or using his official position to influence "any future decision" (1) regarding expansion of District's reclaimed water system, (2) imposing a standby assessment in order to help pay for District's reclaimed water system, or (3) establishing rates for reclaimed or potable water.[4]

Section 87100 provides: "No public official at any level of state or local government shall make, participate in making or in any way attempt to use

---

[3] If we were to ignore the fact that District provides at least two public services, potable water and reclaimed water, the result would be irrational. Because the rate for potable water is not the same as the rate for reclaimed water, it is impossible to compare the consumer of one with the consumer of the other to determine if they are receiving water on the same terms and conditions as each other. By definition they cannot. It follows that the exemption must be applied with recognition of the two public services and the discrete market for each one.

[4] Plaintiff conceded at the hearing in the trial court that plaintiff did not seek, in the first cause of action under the Political Reform Act, to set aside existing standby assessments or water rates based upon Zastrow's past participation.

his official position to influence a governmental decision in which he knows or has reason to know he has a financial interest."

Without reaching the substantive issue whether any of Zastrow's past conduct with regard to standby assessments and water rates actually violated section 87100, the trial court declined to enjoin any future conduct of Zastrow.

Plaintiff contends the court's refusal was based solely on the court's erroneous conclusion that the Political Reform Act's injunctive provision, section 91003, does not authorize or permit an injunction against future participation, a question of pure law. Plaintiff contends the judgment must be reversed so that the trial court may exercise its discretion.

Contrary to plaintiff's contention, the trial court's opinion clearly states, "[a]s a separate and alternative ground of decision, even if subsection (a) of section 91003 is interpreted to permit an injunction where a vote has not yet been taken, the injunctive relief requested by Vernon in the first cause of action is inappropriate under general principles governing the court's exercise of its discretion in granting injunctive relief." Thus, the trial court did exercise its discretion; our review of its decision in that respect is governed by the abuse of discretion standard of review; and we find the trial court did not abuse its discretion in declining to issue injunctive relief.

Section 91003 provides: "(a) Any person residing in the jurisdiction may sue for injunctive relief to enjoin violations or to compel compliance with the provisions of this title. . . . [¶] (b) Upon a preliminary showing in an action brought by a person residing in the jurisdiction that a violation of Article 1 (commencing with Section 87100) . . . has occurred, the court may restrain the execution of any official action in relation to which such a violation occurred, pending final adjudication. If it is ultimately determined that a violation has occurred and that the official action might not otherwise have been taken or approved, the court may set the official action aside as void. The official actions covered by this subsection include, but are not limited to orders, permits, resolutions and contracts, but do not include the enactment of any state legislation. In considering the granting of preliminary or permanent relief under this subsection, the court shall accord due weight to any injury that may be suffered by innocent persons relying on the official action."

■ In the portion of its opinion in which the court concluded that an injunction against future participation "is not available," the court noted that section 91003, subdivision (b) relates to a past violation ("a violation . . .

has occurred"), and authorizes setting aside a consequential official action only if the official action "might not otherwise have been taken" (e.g., the vote of the offending board member made a difference in the outcome). The court reasoned that subdivision (a) "does not provide for or allow relief that is independent of the limits on injunctive relief provided for by subsection (b)."

Plaintiff contends this interpretation was erroneous and that subdivision (a) authorizes injunctive relief against future conduct by an official which would violate section 87100, independently of whether the official action taken as a result of the unlawful conduct should be set aside under section 91003, subdivision (b). We agree. Subdivision (a) of section 91003 authorizes "injunctive relief to enjoin violations or to compel compliance with the provisions of this title." In *Witt* v. *Morrow* (1977) 70 Cal.App.3d 817, 820 [139 Cal.Rptr. 161], the trial court permanently enjoined a city council member "from participating in decisions concerning the Linda Vista Shopping Center Project because of a conflict of interest." Ultimately affirming the injunction, the appellate court explained, "Under Government Code section 91003, subdivision (a), the court may enjoin violations or compel compliance with the Political Reform Act of 1974; when a violation has occurred, the court may set aside the official action as void (Gov. Code, § 91003, subd. (b))." (*Id.* at p. 820, fn. 1.) *Witt* impliedly rejects the trial court's theory that the limitations in subdivision (b) must be grafted onto subdivision (a).

But even if the trial court misinterpreted section 91003, subdivision (a), the court's refusal to issue an injunction was alternatively based upon the court's exercise of its discretion. Even if section 91003, subdivision (a) would *authorize* an injunction against future participation in specified decisions if the illegality of such participation were clear enough, discretionary considerations support denial of an injunction. Plaintiff is seeking to enjoin an elected District board member from participating in any decisions involving standby assessments and water rates. " 'Especially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative.' . . . '[I]njunction "is an extraordinary power, and is to be exercised always with great caution [.]" . . . A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued in the absence of any evidence that the acts are likely to be repeated in the future.' " (*Dawson* v. *East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1040 [34 Cal.Rptr.2d 108].)

The trial court's decision states, "a real and immediate threat of irreparable harm is a prerequisite to the granting of injunctive relief in

California. It cannot be determined with any certainty whether a public official in fact will violate his duty to refrain from making a decision in which he knows he is financially interested until a particular issue is framed for his decision and he in fact casts a vote on the issue. . . . The most recent action Vernon cites is Zastrow's participation on February 27, 1995 in a public hearing relating to the 1995-1996 standby assessment. Vernon does not dispute that Zastrow did not vote on the 1995-1996 standby assessment itself and that Zastrow did not vote on the adoption of the District's water fees for the year 1995-1996. [¶] Thus, drawing all inferences from the facts in favor of Vernon, what is shown is a pattern of allegedly wrongful conduct up to February 1995, followed by two votes in which the alleged wrongdoer refrained from such conduct. Under these circumstances injunctive relief is inappropriate. . . . Because plaintiff has not shown a reasonable probability that the acts complained of will recur, the Court declines to exercise its discretion to issue the requested injunction."

Plaintiff contends there is no reason to believe that Zastrow will not participate in such decisions in the future, but the evaluation of the probability of recurrence lies in the discretion of the trial court. We cannot say that the trial court manifestly abused its discretion in concluding that plaintiff did not bear plaintiff's burden of proving in a clear, nonremote, nonspeculative manner a need for an injunction against Zastrow's future participation in any standby assessment or water rate decisions.

In the first cause of action under the Political Reform Act, the *only* relief plaintiff requested was injunctive. Plaintiff's second and fourth causes of action for declaratory relief did not involve the Political Reform Act. At the hearing in the trial court plaintiff conceded it did not seek injunctive relief against existing standby assessments or water rates, only an injunction as to Zastrow's future participation in such decisions.

Therefore, once the trial court decided in the exercise of its discretion that it would deny the prospective injunctive relief, the court was not required to render an advisory opinion on whether Zastrow's past participation *had* violated the act or future participation *would* violate the act. Nowhere in plaintiff's pleadings did plaintiff request declaratory relief concerning whether Zastrow's participation in water rate or standby assessment decisions would violate the Political Reform Act. As the trial court explained, plaintiff was not entitled to declaratory relief, because plaintiff had not pleaded it. The trial court added that, in any event, Code of Civil Procedure section 1061 authorizes denial of declaratory relief where the court in its discretion determines a declaration is not necessary or proper under all the circumstances. The same considerations that prompted the court to deny

injunctive relief as unnecessary also led the court to find there is no actual present controversy sufficient to compel the court to give declaratory relief.

Thus although plaintiff on appeal complains in a passing comment that the trial court should have decided those issues, and the parties have briefed them, we do not reach them. These issues involve extensive factual disputes concerning whether the water rates and standby assessments had a material financial effect on Peerless, and legal disputes whether these effects were indistinguishable from the effect on the public generally within the meaning of section 87103 and the complex regulations thereunder, issued by the Fair Political Practices Commission.[5] The trial court properly denied declaratory relief because plaintiff had not pleaded it. (See *Columbia Pictures Corp.* v. *DeToth* (1945) 26 Cal.2d 753, 762 [161 P.2d 217, 162 A.L.R. 747].) The trial court denied the only relief plaintiff actually requested (injunction) on a sufficient basis (Zastrow's recent abstention) which was independent of whether the Political Reform Act had been or would be violated by Zastrow's participation. Therefore, the trial court was not required to determine the merits of the alleged violations, nor must we do so. These issues should not be decided in a vacuum, when the only relief actually requested by plaintiff below (injunction) was properly denied.

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 19, 1999. Kennard, J., was of the opinion that the petition should be granted.

---

[5]Zastrow would have a financial interest in a decision only if it is "reasonably foreseeable that the decision will have a material financial effect [on Peerless], distinguishable from its effect on the public generally." (§ 87103.) The regulations defining material financial effect require a factual determination of specific thresholds by which the gross revenues, expenses or value of Peerless would be affected. (Cal. Code Regs., tit. 2, former § 18702.2, now § 18705.1, subd. (b).) The factual effects on Peerless of standby assessments and water rates are disputed by defendants. Even if there would be sufficient material financial effects on Peerless, there would be no violation if the effects on Peerless were indistinguishable from the effects on the public generally. (§ 87103.) Resolution of this issue would require legal analysis and factual determinations based on the complex regulations defining "effect on the public generally," with specific definitions of "significant segment[s]" of the public and special rules applicable to water district rates and assessments. (Cal. Code Regs., tit. 2, former § 18703, now §§ 18707, 18707.1.)