BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE TODD SPITZER, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a city council member place a business advertisement in the city's community services and activities brochure if the council member is charged the same rate as charged other business advertisers?
 CONCLUSION
A city council member may place a business advertisement in the city's community services and activities brochure if the council member is charged the same rate as charged other business advertisers.
 ANALYSIS
The question presented for resolution concerns the proposed placement of a full-page advertisement in a city's Community Services Brochure of Classes and Activities ("brochure") by a city council member who wishes to promote his private tutoring business. For the past 15 years prior to assuming office, the council member has placed an advertisement for his business in the brochure, which is published by the city four times each year. His current advertisement runs through the end of the year. May he continue to place his business advertisement in the brochure now that he is a member of the city council? We conclude that he may.
The brochure, which currently runs about 75 pages, is sent to all city residents. City employees design and produce the brochure. Its purpose is to provide news of the city's resources and activities and inform city residents of upcoming classes and programs they may attend.
The city sells advertising space in each quarterly brochure to cover the costs of printing and mailing. In effect, the advertising rates are approved by the city council on an annual basis since the revenue produced by the advertisements appears as a line item in the city's budget. Persons placing advertisements must execute an advertising agreement with the city. The agreement specifies the duration, size, and general placement of the advertisement, along with the corresponding price for the advertisement. The agreement is executed by the city administrator on behalf of the city.
The primary statute requiring our analysis is Government Code section 1090,[1] which provides in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."
Section 1090 generally prohibits public officers from being financially interested in contracts made by them in their official capacity or made by boards or commissions of which they are members. (87 Ops.Cal.Atty.Gen. 23, 24 (2004); 69 Ops.Cal.Atty.Gen. 255 (1986).) "[T]he prohibited act is the making of a contract in which the official has a financial interest." (People v. Honig (1996) 48 Cal.App.4th 289, 333.)
The purpose of section 1090 "is to remove or limit the possibility of any personal influence, either directly or indirectly, which might bear upon an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct." (Stigall v. City of Taft (1962)58 Cal.2d 565, 569.) The statutory goal is "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (City of Imperial Beach v. Bailey (1980)103 Cal.App.3d 191, 197.) A contract that violates section 1090 is void and unenforceable. (Thomson v. Call (1985) 38 Cal.3d 633,646.) Importantly, section 1090's prohibition applies regardless of whether the contract would otherwise be fair and equitable (id. at pp. 646-649), and a board member with a proscribed interest may not avoid the prohibition by abstaining from participation in the decision-making process; the entire board is prohibited from executing the agreement where the prohibition is applicable. (Fraser-Yamor Agency, Inc. v. County of Del Norte
(1977) 68 Cal.App.3d 201, 211-212).
Here, the city council member would have a "financial interest" in his advertising agreement with the city under the terms of section 1090. The advertisement would promote his personal business as a private tutor. "Put in ordinary, but nonetheless precise terms, an official has a financial interest in a contract if he might profit from it." (People v. Honig, supra,
48 Cal.App.4th at p. 333.) Prohibited "financial interests" extend to expectations of economic benefit (id. at p. 315); "a financial interest within the meaning of section 1090 may be direct or indirect and includes the contingent possibility of monetary or proprietary benefits." (Id. at p. 325; see Peoplev. Gnass (2002) 101 Cal.App.4th 1271, 1298-1301; People v.Vallerga (1977) 67 Cal.App.3d 847, 865; People v. Darby (1952)114 Cal.App.2d 412, 433, fn. 4).
Not only would the advertising agreement constitute a "contract" for purposes of section 1090, it would be "made" by the council member in his official capacity as well as in his private capacity. As stated in Millbrae Assn. for ResidentialSurvival v. City of Millbrae (1968) 262 Cal.App.2d 222, 237:
 "Although section 1090 refers to a contract `made' by the officer or employee, the word `made' is not used in the statute in its narrower and technical contract sense but is used in the broad sense to encompass such embodiments in the making of a contract as preliminary discussions, negotiations, compromises, reasoning, planning, drawing of plans and specifications and solicitation for bids. [Citation.] Such construction is predicated upon the rationale that government officers and employees are expected to exercise absolute loyalty and undivided allegiance to the best interests of the governmental body or agency of which they are officers or employees, and upon the basis that the object of such a statute is to remove or limit the possibility of any personal influence, either directly or indirectly which may bear on an officer's or employee's decision. [Citation.]"
In the circumstances presented, the city council exercises line-item review of the city's annual budget, which includes anticipated revenues generated by the brochure advertisements. A determination by the city council to increase or decrease advertisement revenues would affect the advertising rates to be charged. The council member in question would thus indirectly participate in the setting of the advertising rates for the brochure. (See City of Imperial Beach v. Bailey, supra,
103 Cal.App.3d at p. 195 [city's unilateral rate increase in contract renewal for concessionaire would violate section 1090]; compare 84 Ops.Cal.Atty.Gen. 34, 36-37 (2001) [modification of rate schedule adopted as part of city licensing activity a regulatory matter and not a contract].)
The fact that the council member's participation in the agreement as a public officer would take place prior to its final execution (i.e., signing by the city administrator) is immaterial. (See Stigall v. City of Taft, supra, 58 Cal.2d at p. 571 [violation of section 1090 where city council member participated in preliminary matters leading to adoption of contract but resigned before formal award of contract]; 81 Ops.Cal.Atty.Gen. 317, 320 (1998) [no showing needed that official subjectively intended to contract with agency after leaving office].) Nor would execution of the contract by the city administrator insulate the council member from the prohibition of section 1090. In 87 Ops.Cal.Atty.Gen. 9 (2004), we found that a delegation of authority to a school district superintendent to contract on behalf of the district did not avoid the conflict provisions of section 1090. We stated:
 "The present circumstances may be distinguished from those in certain of our prior opinions where we have concluded that a public agency board may avoid violating section 1090 when the contract is made by an `independent' government official who does not have a conflict of interest. For example, in 57 Ops.Cal.Atty.Gen. 458 (1974), we concluded that a county purchasing agent, who had independent statutory authority to contract on behalf of the county, could contract with a county supervisor to provide tow truck services to the county. (See also 21 Ops.Cal.Atty.Gen. 90 (1953); 14 Ops.Cal.Atty.Gen. 78 (1949); 3 Ops.Cal.Atty.Gen. 188 (1944).) `The significant fact in each of these opinions is the independent status of the party contracting on behalf of the government agency.' (21 Ops.Cal.Atty.Gen., supra, at p. 92.) That fact is not present here, since a district superintendent's authority to contract remains subject to the review and ratification of the governing board under state law." (Id. at pp. 12-13.)
Here, the city administrator would not have independent statutory authority to contract on behalf of the city, and his contractual powers remain subject to the review and control of the city council. (Cf., see 57 Ops.Cal.Atty.Gen. 460, 461 (1974).)
While the city council member would thus have a financial interest in the advertising contract for purposes of section 1090, we note that the Legislature has identified certain financial interests as not subject to the statutory prohibition. Denominated as "remote interests" (§ 1091) and "noninterests" (§ 1091.5), these exceptions apply in specific circumstances. If a "remote interest" is present, as defined in section 1091, the contract may be made if the officer (1) discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the officer abstains from any participation in the making of the contract. (See 87 Ops.Cal.Atty.Gen., supra, at pp. 25-26; 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen. 230, 235-237 (1995); 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) If a "noninterest" is present, as defined in section 1091.5, the contract may be made without the officer's abstention, and generally a noninterest does not require disclosure. (See 83 Ops.Cal.Atty.Gen., supra, at p. 247; 78 Ops.Cal.Atty.Gen. 362, 369-370 (1995).)
The statutory exception of possible application here is section 1091.5's "noninterest" classification of certain "public services" received under contract:
 "(a) An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following:
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
 "(3) That of a recipient of public services generally provided by the public body or board of which he or she is a member, on the same terms and conditions as if he or she were not a member of the board.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
Under the terms of section 1091.5, subdivision (a)(3), would the city council member be the recipient of "public services generally provided by [the city council]" when he contracts with the city administrator for placement of his advertisement in the brochure?
In City of Vernon v. Central Basin Mun. Water District (1999)69 Cal.App.4th 508, a member of a municipal water district board, who was also an owner and officer of a private water company, purchased reclaimed water from the district for his company. The court held that the continuing sales of reclaimed water to the company constituted "public services generally provided" within the meaning of section 1091.5, subdivision (a)(3). The court analyzed the statutory exception as follows:
 "The trial court found this exception applies because delivery of reclaimed water is a public service generally provided by District, at an established rate of general applicability to all purveyors of reclaimed water, on the same terms and conditions. We agree.
 ". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"Plaintiff also contends that delivery of reclaimed water does not constitute `public services generally provided,' because the reclaimed water is provided only to 23 wholesale purveyors of reclaimed water, of which Peerless is one. Plaintiff argues that the phrase `public services generally provided' must be construed to mean `services provided to the general public,' or to the `public at large.' We disagree. Plaintiff is advocating that we rewrite the words of the statute. Public agencies provide many kinds of `public services' that only a limited portion of the public needs or can use. This does not derogate from their characterization as `public services' according to the ordinary meaning of those words. The fact that District distributes reclaimed water through intermediaries does not negate the public service nature of providing reclaimed water. There are 23 purveyors, all of whom are charged the same set rate. This is sufficient to establish that the public services, delivery of reclaimed water, are `generally provided' `on the same terms and conditions as if [Zastrow] were not a member of the board.' There is no special rate for Peerless.
"The parties cite no case construing the `public services generally provided' language of section 1091.5, subdivision (a)(3). But the trial court's conclusion is supported by an opinion of the Attorney General. (80 Ops.Cal.Atty.Gen. 335 (1997).) There the Attorney General said the `apparent intent of this provision is to exempt a board member's receipt of public services that are given under "the same terms and conditions" to the other customers of the public agency.' (Id. at pp. 337-338.) The Attorney General opined the Legislature contemplated `the provision of services in accordance with previously adopted rate schedules applicable to all customers.' (Id. at p. 338.) This describes the public services which District provided here, delivery of reclaimed water at a previously adopted rate applicable to all of District's customers of reclaimed water." (Id. at pp. 514-515, fn. omitted.)
In 81 Ops.Cal.Atty.Gen. 317, supra, we reviewed the scope of the "public services" exception of section 1091.5, subdivision (c)(3), stating:
 "We have examined the legislative history of the 1961 amendment that added the `public services' exemption to section 1091.5. (Stats. 1961, ch. 381, § 2.) The scope of this exemption is not identified therein. We have previously determined informally, however, that `public services' would include public utilities such as water, gas, and electricity, and the renting of hangar space in a municipal airport on a first come, first served basis. The furnishing of such public services would not involve the exercise of judgment or discretion by public agency officials. Rather, the rates and charges for the services would be previously established and administered uniformly to all members of the public. (See 80 Ops.Cal.Atty.Gen. 335, 338 (1997).)" (Id. at p. 320.)
In deciding whether the sale of advertising space in the city's brochure comes within the meaning of "public services," we are mindful that statutory exceptions to conflict of interest laws are to be strictly construed. (Thorpe v. Long Beach CommunityCollege Dist. (2000) 83 Cal.App.4th 655, 663-664; see 69 Ops.Cal.Atty.Gen., supra, at p. 258.) Nevertheless, "[p]ublic agencies provide many kinds of `public services' that only a limited portion of the public needs or can use." (City of Vernonv. Central Basin Mun. Water Dist., supra, 69 Cal.App.4th at p. 515; see Lowell v. City of Boston (1873) 111 Mass. 454 [". . . The circumstances may be such that the [public] use or service intended to be secured will practically affect only a small portion of the inhabitants or lands of the Commonwealth. The essential point is, that it affects them as a community, and not merely as individuals. . . ."].)
Here, the particular "service" provided by the city is not specially tailored or conditioned to meet the individualized needs or circumstances of any city council member. (See City ofVernon v. Central Basin Mun. Water Dist., supra, 69 Cal.App.4th at p. 515). We are not presented with discretionary or highly customized services benefitting one or more council members. (See 80 Ops.Cal.Atty.Gen. 335, 339 (1997).) Rather, the publication of the brochure is a public service for the entire community, and those placing advertisements will be providing commercial information with respect to products and services that are available to the city's residents. Anyone may pay for advertising space in the brochure at a predetermined rate based solely upon the size and duration of the advertisement.[2] The revenues produced by the sale of advertising space cover the costs of distributing the brochure. In these circumstances, we believe that the city's sale of advertising space may be considered to be an ancillary public service. (See 81 Ops.Cal.Atty.Gen., supra,
at p. 320.)
Accordingly, we find that the council member's purchase of advertising space in the brochure to promote his private tutoring business would involve him in the making of a "contract" in his official capacity for purposes of section 1090. However, since he would not receive a special rate or discount, but would be subject to the same terms and conditions that are applicable to all other members of the general public who wish to advertise in the brochure, the council member's advertising contract would fall within "public services generally provided," as that phrase is used in the section 1091.5, subdivision (a)(3).
We conclude that a city council member may place a business advertisement in the city's community services and activities brochure if the council member is charged the same rate as charged other business advertisers.[3]
[1] All section references hereafter are to the Government Code.
[2] Placement of an advertisement in a particular location of the brochure would require an additional fee.
[3] Because of the "noninterest" exception of section 1091.5, subdivision (a)(3), the advertising contract may be executed by the city administrator on behalf of the city council. Without application of this exception, the contract could not be executed even if the council member were to abstain from any involvement in the contract in his capacity as a city council member. Whether he would be required to abstain in any city council decisions affecting the contract due to the requirements of the Political Reform Act of 1974 (§§ 81000-91014; see City of Vernon v.Central Basin Mun. Water Dist., supra, 69 Cal.App.4th at p. 519, fn. 5) is beyond the scope of this opinion. The Fair Political Practices Commission provides advice to public officers concerning their duties and responsibilities under the latter legislative scheme. (See §§ 83111-83114.)