BILL LOCKYER Attorney General MARC J. NOLAN Deputy Attorney General
THE HONORABLE JOHN FELLOWS, CITY PROSECUTING ATTORNEY, CITY OF TORRANCE, has requested an opinion on the following questions:
1. May members of a city airport commission rent hangar space at the city airport if the space is rented on a first-come, first-served basis at set rates?
2. If so, to what extent may such commissioners participate in or attempt to influence the airport commission's or city council's consideration of proposed revisions to the hangar rental rate structure?
 CONCLUSIONS
1. Members of a city airport commission may rent hangar space at the city airport if the space is rented on a first-come, first-served basis at set rates.
2. Members of a city airport commission may not, absent a legal necessity, participate in or attempt to influence the commission's or city council's consideration of proposed revisions to a hangar rental rate structure if it is reasonably foreseeable that the decision will have a material effect, distinguishable from its effect on the public generally, on their respective finances.
 ANALYSIS
We are informed that a city has an airport commission that reports and makes recommendations to the city council on various matters related to the city airport, including "the leasing of airport land for fixed base operations and other aeronautical purposes." The city rents hangar space at the airport on a first-come, first-served basis; the fees are based upon the square footage of the hangar space and whether the renter is a resident or non-resident of the city. We are also informed that several members of the seven-member airport commission are currently renting hangar space from the city.
Given this context, we are asked whether the airport commissioners may continue to rent hangar space while serving on the commission and, if so, to what extent may they participate in or attempt to influence the commission's or city council's consideration of proposed revisions to the hangar rental rate structure. We conclude that the commissioners may continue to rent hangar space at the set rates but may not, absent a legal necessity, participate in or attempt to influence the commission's or city council's consideration of proposed revisions to the rental rate structure if it is reasonably foreseeable that the decision will have a material effect, distinguishable from its effect on the public generally, on their respective finances.
1. Renting Hangar Space
We first consider whether the airport commissioners may continue to rent hangar space without violating the terms of Government Code section 1090,[1] which provide in part:
 "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."
Section 1090 is concerned with financial interests, other than remote or minimal interests, that prevent public officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their agencies. (Stigall v.City of Taft (1962) 58 Cal.2d 565, 569.) Under section 1090, "the prohibited act is the making of a contract in which the official has a financial interest." (People v. Honig (1996)48 Cal.App.4th 289, 333.) A contract that violates section 1090 is void (Thomson v. Call (1985) 38 Cal.3d 633, 646), and a public official or employee found to have willfully violated section 1090 is subject to criminal liability (§ 1097; see People v.Gnass (2002) 101 Cal.App.4th 1271, 1297).
Here, a city commissioner who rents hangar space from the city has a financial interest in his or her rental agreement with the city. The commissioner would be a "city officer," and the rental agreement would be a "contract" for purposes of section 1090. (See Thomson v. Call, supra, 38 Cal.3d at p. 649; Chapman v.Superior Court (2005) 130 Cal.App.4th 261, 274; City of Vernonv. Central Basin Mun. Water Dist. (1999) 69 Cal.App.4th 508,514-515; 88 Ops.Cal.Atty.Gen. 122, 124 (2005).) While any rental agreement executed by an airport commissioner prior to taking office would not be affected by section 1090 (see 88 Ops.Cal.Atty.Gen. 183, 186 (2005)), would the renewal of any rental agreement while he or she sits on the commission be subject to the statutory prohibition?
Not all financial interests come under section 1090's prohibition. The Legislature has identified certain financial interests as "remote interests" (§ 1091) and "noninterests" (§ 1091.5). If a "remote interest" is present, as defined in section 1091, the contract may be made if (1) the officer in question discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the officer abstains from any participation in the making of the contract. (See 88 Ops.Cal.Atty.Gen. 106, 108 (2005); 83 Ops.Cal.Atty.Gen. 246, 248 (2000); 78 Ops.Cal.Atty.Gen. 230, 235-237 (1995); 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) If a "noninterest" is present, as defined in section 1091.5, the contract may be made without the officer's abstention, and generally a noninterest does not require disclosure. (City of Vernon v. Central BasinMun. Water Dist., supra, 69 Cal.App.4th at pp. 514-515; 84 Ops.Cal.Atty.Gen. 158, 159-160 (2001); 83 Ops.Cal.Atty.Gen.,supra, at p. 247.)
The statutory exception requiring our examination here is the "noninterest" classification of "public services" received under contract. Subdivision (a)(3) of section 1091.5 provides:
 "An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following:
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "(3) That of a recipient of public services generally provided by the public body or board of which he or she is a member, on the same terms and conditions as if he or she were not a member of the board."
We have addressed the scope of the "public services" exception to section 1090 on several occasions. (See, e.g., 88 Ops.Cal.Atty.Gen., supra, at pp. 126-129; 80 Ops.Cal.Atty.Gen. 335, 338 (1997); see also City of Vernon v. Central Basin Mun.Water Dist., supra, 69 Cal.App.4th at pp. 514-515.) In 81 Ops.Cal.Atty.Gen. 317, 320 (1998), we indicated that renting hangar space at a municipal airport could constitute a "noninterest" under section 1091.5, subdivision (a)(3):
 "We have examined the legislative history of the 1961 amendment that added the `public services' exemption to section 1091.5. (Stats. 1961, ch. 381, § 2.) The scope of this exemption is not identified therein. We have previously determined informally, however, that `public services' would include public utilities such as water, gas, and electricity, and the renting of hangar space in a municipal airport on a first come, first served basis. The furnishing of such public services would not involve the exercise of judgment or discretion by public agency officials. Rather, the rates and charges for the services would be previously established and administered uniformly to all members of the public. [Citation.]" (Italics added)
In keeping with our 1998 opinion, the hangar rental scheme at issue here is applicable to all potential customers and available on a first-come, first-served basis; the rental fees are based upon the square footage of the hangar space and whether the renter is a resident or non-resident of the city.[2]
Airport commissioners receive no priority to the hangar space and receive no preferential rental rate.
We reject the suggestion that due to the limited number of airport hangars and would-be renters (i.e., owners of airplanes), these particular "public services" would not be "generally provided" within the meaning of section 1091.5, subdivision (a)(3). That issue was addressed in City of Vernon v. CentralBasin Mun. Water Dist., supra, 69 Cal.App.4th 508, where a water district was selling reclaimed water to a small number of customers including a company ("Peerless") owned by a water district board member ("Zastrow"). In rejecting the plaintiff's "too few customers" argument, the court reasoned as follows:
 "Plaintiff also contends that delivery of reclaimed water does not constitute `public services generally provided,' because the reclaimed water is provided only to 23 wholesale purveyors of reclaimed water, of which Peerless is one. Plaintiff argues that the phrase `public services generally provided' must be construed to mean `services provided to the general public,' or to the `public at large.' We disagree. Plaintiff is advocating that we rewrite the words of the statute. Public agencies provide many kinds of `public services' that only a limited portion of the public needs or can use. This does not derogate from their characterization as `public services' according to the ordinary meaning of those words. The fact that District distributes reclaimed water through intermediaries does not negate the public service nature of providing reclaimed water. There are 23 purveyors, all of whom are charged the same set rate. This is sufficient to establish that the public services, delivery of reclaimed water, are `generally provided' `on the same terms and conditions as if [Zastrow] were not a member of the board.' There is no special rate for Peerless." (Id. at pp. 514-515, fn. omitted.)
More recently, we concluded that a city council member's contract to purchase advertising space for his business in a city brochure qualified as a noninterest within the meaning of section 1091.5, subdivision (a)(3). (88 Ops.Cal.Atty.Gen., supra, at pp. 1261-28.) In reaching our conclusion, we were mindful "that statutory exceptions to conflict of interest laws are to be strictly construed [citation]," but that, as observed in City ofVernon, "[p]ublic agencies provide many kinds of `public services' that only a limited portion of the public needs or can use." (Id. at p. 128.)
We conclude that members of a city airport commission may rent hanger space at the city airport if the space is rented on a first-come, first served basis at set rates.
2. Changing the Rental Rate Structure
Next, we consider to what extent, if any, the airport commissioners who rent hangar space from the city may participate in, or attempt to influence, the commission's or city council's consideration of proposed revisions to the hangar rental rate structure. The Political Reform Act of 1974 (§§ 81000-91014; "Act") prohibits public officials from participating in governmental decisions in which they have a "financial interest." (§ 87100; see 88 Ops.Cal.Atty.Gen. 32, 33-34 (2005); 78 Ops.Cal.Atty.Gen. 362, 368-374 (1995); 74 Ops.Cal.Atty.Gen. 82, 86 (1991); 70 Ops.Cal.Atty.Gen. 45, 46 (1987).) The Fair Political Practices Commission ("FPPC") administers the Act and has adopted implementing regulations found in sections 18700-18709 of title 2 of the California Administrative Code.[3]
As relevant here, the airport commissioners are "public officials" within the meaning of the Act, which include "every member, officer, employee or consultant of a local government agency. . . ." (§ 82048; see 58 Ops.Cal.Atty.Gen. 345, 352-353 (1975).) This definition in turn encompasses salaried and unsalaried members of a board or commission with "decision-making authority." (Reg. 18701, subd. (a).) Decision-making authority includes the making of substantive recommendations that are regularly approved without significant amendment or modification (Reg. 18701, subd. (a)(1)(C)), and we are informed that here, the airport commission's recommendations are routinely accepted and approved by the city council. Further, the airport commission's recommendation to revise the rental rate structure for airport hangars meets the definition of "participating in making a governmental decision" because it involves advising the "decisionmaker," the city council, by presenting an analysis and opinion that "requires the exercise of judgment . . . to influence a governmental decision." (Reg. 18702.2, subd. (b)(2).)
Whether an airport commissioner would have a proscribed "financial interest" in the decision to change the rental rate structure would depend upon whether "it is reasonably foreseeable that the decision will have a material financial effect, distinguishable from its effect on the public generally, on the official, [or] a member of his or her immediate family. . . ." (§ 87103.) A financial effect includes increasing or decreasing the personal expenses, income, assets, or liabilities of the official or a member of the official's immediate family (Reg. 18703.5), and a public official is deemed to be directly involved in a governmental decision that has any financial effect on his or her personal finances (Reg. 18704.5, subd. (a)). To be considered "material," the financial effect must amount to at least $250 in a 12-month period. (Reg. 18705.5.)
Accordingly, a disqualifying conflict would arise if it is "substantially likely" (Reg. 18706) that an airport commission's decision regarding hangar rental rates will affect the finances of a commissioner by at least $250 in a 12-month period[4]
and that this effect is distinguishable from the effect of the decision on the public generally.[5]
When a public official has a disqualifying financial interest in a governmental decision, the Act requires that he or she abstain from participating in every aspect of the decision-making process. (§ 87100; Regs. 18700, 18702.1; see Hamilton v. Town ofLos Gatos (1989) 213 Cal.App.3d 1050, 1058-1059; 86 Ops.Cal.Atty.Gen.142, 143 (2003).) The official must also avoid attempting to use his or her official position to influence the decision, defined as when "the official contacts, or appears before, or otherwise attempts to influence any member, officer, employee or consultant of the agency." (Reg. 18702.3, subd. (a).) However, the official may appear before the agency "as a member of the general public . . . to represent himself or herself on matters related solely to the official's personal interests . . ." (Reg. 18702.4, subds. (a)(2), (b)(1)) and may communicate views that represent such personal interests to the general public or the press (Reg. 18702.4, subd. (b)(2)).
Also, because the financial interests of several of the airport commissioners may be materially affected by changing the hangar rate structure, we note the possible applicability of the Act's "legally required participation" exception. If the disqualification of a number of commissioners will leave the commission with less than a quorum to act, disqualified members may be chosen by random selection[6] to participate in the decision, provided that the conflict is disclosed and certain other procedures are followed. (§ 87101; Reg. 18708; Kunec v.Brea Redevelopment Agency (1997) 55 Cal.App.4th 511, 519-520; 61 Ops.Cal.Atty.Gen. 243, 252 (1978); see also Hamilton v. Town ofLos Gatos, supra, 213 Cal.App.3d at pp. 1057-1058.)
Finally, we caution that the full extent to which the Act's provisions and implementing regulations may apply here would depend upon a careful examination of all the particular facts involved. In 67 Ops.Cal.Atty.Gen. 369, 374 (1984), we noted that the FPPC was the appropriate agency to examine the relevant facts and make a determination as to the Act's applicability:
 ". . . Under the provisions of section 83114 of the Government Code any person may request an opinion of, or seek the advice of, the FPPC concerning his duties under the [Act]. Such an opinion or advice may be relied upon so long as the FPPC was provided with all the material facts and will constitute a complete defense to civil or criminal penalties under the [Act].
 "Thus specific questions on particular transactions involving the application of the [Act] to an officer (such as the agency directors herein) should be addressed to the FPPC." (Fn. omitted.)
We conclude that members of a city airport commission may not, absent a legal necessity, participate in or attempt to influence the commission's or city council's consideration of proposed revisions to a hangar rental rate structure if it is reasonably foreseeable that the decision will have a material effect, distinguishable from its effect on the public generally, on their respective finances.
[1] All further references to the Government Code are by section number only.
[2] We note that rates for services may differentiate on the basis of residency within the city. (See Hansen v. City of SanBuenaventura (1986) 42 Cal.3d 1172, 1181-1191.)
[3] All further references to title 2 of the California Administration Code are by regulation number only.
[4] Under section 87103, a financial interest may also arise if it is reasonably foreseeable that the decision will have the requisite financial effect on any business entity or real property "in which the public official has a direct or indirect interest worth two thousand dollars ($2,000) or more." (§ 87103, subds. (a), (b).) An "interest in real property" includes any leasehold interest with a fair market value of $2,000 or more (§ 82033), but it does not include the interest of a tenant in a periodic tenancy of one month or less (Reg. 18233). We are not informed whether the commissioners in question are renting hangar space for a fixed term or on a periodic tenancy of one month or less; nor are we aware of the monetary value of an individual commissioner's interest in any leasehold interest or in any business entity that might hold it. But regardless of these provisions regarding leaseholds and business entities, the threshold for a material financial effect will be reached where it is reasonably foreseeable that the governmental decision regarding hangar rental rates will affect the finances of a commissioner by at least $250 within a 12-month period. (Reg. 18705.5.)
In a 1975 opinion, we determined that a city airport commissioner renting an airport hangar did not have a financial interest within the meaning of section 87103 because the commissioner's interest in the hangar leasehold did not meet the then-applicable monetary limit. (See 58 Ops.Cal.Atty.Gen.,supra, at p. 353.) At that time, section 87103 did not contain the language cited above, regarding the financial effect that a decision has on "the official or on a member of his or her immediate family," which the Legislature added in 1985. (Stats. 1985, ch. 611, § 1.5.) Thus, our earlier opinion does not bear on our interpretation of this subsequently added statutory language or the subsequently adopted implementing regulations (see, e.g., Regs. 18703.5, 18704.5, 18705.5) that pertain to it.
[5] Under the "public generally" exception, an otherwise disqualifying financial interest will not prevent the official from participating in the particular governmental decision where the financial effect of a decision on the public official's economic interests is substantially similar to its effect on a "significant segment" of the public, as described by various, specific quantitative thresholds. (See Regs. 18707-18707.9.) Whether one or more of these thresholds might be met in the present situation would require a fact-dependent analysis that is beyond the scope of this opinion.
[6] The applicable regulatory provision states that this exception "shall be construed narrowly" and shall "[r]equire participation by the smallest number of officials with a conflict that are `legally required' in order for the decision to be made." (Reg. 18708, subd. (c)(3).)